1794

SEASIDE RESORTS, INC., d/b/a Oyster Bay Golf Links, Larry Young and Judy Young, Respondents-Appellants v. CLUB CAR, INC., Lester Electrical of Nebraska, Inc., and Coastal Cars of Myrtle Beach, Defendants, Club Car, Inc., and Lester Electrical of Nebraska, Inc., Appellants-Respondents, and Coastal Cars of Myrtle Beach, Respondent.

(416 S.E. (2d) 655)

Court of Appeals

*John B. McLeod* and *Amy M. Snyder,* Greenville, *Robert M. Erwin* and *Susan C. Pardue,* Myrtle Beach, *for appellants-respondents.*

*John A. Hagins*, Greenville, *for respondents-appellants*.

*John B. McCutcheon, Jr.*, and *Mary Ruth M. Baxter*, Conway, *for respondent*.

Heard Sept. 16, 1991; Decided March 30, 1992.

Reh. Den. Apr. 30, 1992.

BELL, Judge:

This is an insurance subrogation action brought in the name of the insured, Seaside Resorts, Inc. The action arises from a fire that occurred on July 19, 1985, at the Oyster Bay Golf Links in Sunset Beach, North Carolina. Seaside owns and operates Oyster Bay. The fire destroyed the clubhouse, its contents, and a fleet of golf carts. Three insurance companies paid Seaside a total of $646,900 for the loss and were subrogated to its rights in that amount. Thereafter, Seaside brought this action against Club Car, Inc., the manufacturer and seller of the golf carts, Lester Electrical of Nebraska, Inc., the manufacturer of the golf cart battery chargers, and Coastal Cars of Myrtle Beach, Club Car's local service representative in Myrtle Beach, South Carolina. Larry and Judy Young, the owners of Seaside and the managers of Oyster Bay, were additional plaintiffs. The complaint alleged causes of action in strict liability, negligence, breach of express warranty, and breach of implied warranties of merchantability and fitness for a particular purpose. As the action was governed by the substantive law of North Carolina, which does not recognize strict products liability, the court dismissed the strict liability claim. The case was tried to a jury on the remaining causes of action. At the close of the evidence, the court directed a verdict for Coastal Cars. The jury returned a general verdict of $805,000 against Club Car and Lester Electrical. They appeal. Seaside cross appeals the directed verdict for Coastal Cars and the court's refusal to award prejudgment interest. We affirm.

The fire occurred after the golf course had closed for the day. The employee responsible for the golf carts had returned them to a storage area under the clubhouse, where he plugged them into an electrical current to recharge their batteries. About twenty minutes after he closed the cart area, the golf professional upstairs in the clubhouse heard a bumping noise

downstairs and discovered black smoke coming from the cart area. The ensuing fire destroyed the clubhouse, its contents, and the golf cart fleet.

There is no factual dispute that the fire started in the golf cart area. The main factual question at trial was what caused the fire. Seaside contended a defective battery charger plug on one of the golf carts overheated and started the conflagration.

The plug is part of the battery charging system for each cart. The charger is plugged into a normal electrical wall outlet. It steps down the voltage and rectifies the current from AC to DC. The current leaves the charger through a cord that plugs into a receptacle on the golf cart. The DC current then flows to the battery and charges it. When the battery is charged, the charger automatically shuts off.

Lester manufactured battery chargers with yellow, flexible black, flexible red, stiff red, and gray plugs.[1] The different colors represented manufacturer design changes in the plug from 1970 to the time of trial. Lester made these successive design changes to solve a problem of wires breaking inside the plug from flexing in the normal course of plugging and unplugging the battery charger. There was evidence that when a wire broke, electricity would arc across the break causing carbon to build up inside the plug. The plug would then overheat and could start a fire. The golf carts and batteries contained many flammable materials, including fiber glass, plastics, and chemicals, that could be ignited by a hot plug. Prior to the clubhouse fire, golf carts at Oyster Bay had actually caught fire from overheated plugs. In one case, the seat of a golf cart burst into flames within ten minutes after the battery charger was plugged in.

I.

Under North Carolina law, to recover for breach of an implied warranty of merchantability the plaintiff must prove that (1) a merchant sold goods, (2) the goods were not "merchantable" at the time of sale, (3) the plaintiff or

[1] Most of the plugs on Seaside's golf carts were flexible black and flexible red plugs. Seaside did not have any stiff red plugs, the latest design upgrade available before the fire. The gray plugs were a further design improvement developed and manufactured after the fire at Oyster Bay.

his property was injured by such goods, (4) the defect or other condition amounting to a breach of the implied warranty of merchantability proximately caused the injury, and (5) the plaintiff so injured gave timely notice to the seller. N.C.G.S. § 25-2-314 (1986); *Jolley v. General Motors Corp.*, 55 N.C. App. 383, 285 S.E. (2d) 301 (1982); *Reid v. Eckerds Drugs, Inc.*, 40 N.C. App. 476, 253 S.E. (2d) 344 (1979), *cert. denied*, 297 N.C. 612, 257 S.E. (2d) 219 (1979). An action for breach of the implied warranty of merchantability entitles a plaintiff to recover without any proof of negligence on the defendant's part. *Reid v. Eckerds Drugs, Inc., supra.*

Club Car and Lester argue that the trial court should have granted their motions for a directed verdict and for judgment notwithstanding the verdict as to Seaside's claim for breach of the implied warranty of merchantability. The question for our decision is whether, viewing the record in the light most favorable to Seaside, there was any evidence that (1) the battery charger plugs on Seaside's golf carts were not fit for their ordinary purpose because they were defective at the time of sale and (2) the Oyster Bay fire was caused by a battery charger plug overheating. *See, Stanley Smith & Sons v. Limestone College*, 283 S.C. 430, 322 S.E. (2d) 474 (Ct. App. 1984); *Maybank v. S.S. Kresge Co.*, 46 N.C. App. 687, 266 S.E. (2d) 409 (1980), *affirmed as modified*, 302 N.C. 129, 273 S.E. (2d) 681 (1981). With respect to the defect, Seaside had the burden of presenting evidence that the plug was dangerous when used for the purpose for which it was manufactured. *See, Cockerham v. Ward*, 44 N.C. App. 615, 262 S.E. (2d) 651 (1980).

We conclude there was sufficient evidence to send the issue of breach of the implied warranty of merchantability to the jury.

*Existence of a defect.* The evidence showed Seaside purchased new golf carts from Club Car about once every two years. In December, 1982, Club Car sold Seaside golf carts with the flexible black battery charger plug. In the summer of 1984, most of these were replaced with the flexible red plug. At the time of the fire, the golf carts had mostly red plugs with some black plugs and a few yellow plugs.

There was testimony by Lester's president that the wires in the red and black plugs tended to break. He also testified

that when a wire breaks there is a heat build-up in the plug. Lester knew of the problem with wire breakage and overheating in its plugs by 1983. Lester treated the failure of the plugs to work because of wire breakage as a warranty situation to be remedied free of charge to the consumer.

In October, 1984, there was a fire in a golf cart on charge at Oyster Bay. Seaside notified the product safety manager at Club Car of this fire. Coastal Cars performed warranty repairs on the golf cart. That same month an engineer began tests at Club Car's laboratory involving flame in the red plugs. These tests were in response to warranty inspection reports from the field and the golf cart fire at Oyster Bay.

The laboratory tests conducted for Club Car and Lester showed that when the wires were broken, electricity would arc across the break causing carbonization inside the plug. As a result, the plugs would overheat to the point of burning the neoprene insulation and generating smoke. Repeated arcing across the break set the plug aflame. The flame from the plug then burned the seat of the golf cart. The person who conducted these tests stated that wires in the black plug had a "much greater" propensity to break than those in the red plug. He also stated Club Car received numerous warranty complaints about the red and black plugs, including complaints about flames occurring at the plug. Club Car received complaints about the black plug within six months after it was introduced in 1982.

As Club Car received complaints about the plugs from the field, it reported them back to Lester. As a result, there were several meetings between the two companies before June, 1985, about failure of the plugs. To try to solve the problem, Club Car had undertaken internally to redesign the plug. Lester, however, convinced Club Car that its redesigned plug was not the best approach to take, suggesting instead some modifications in the red plug. Lester modified the plug. Club Car furnished these modified ("stiff red") plugs to its buyers after June, 1985.

Numerous documents in evidence also referred to the ▉ defective plugs and the problem of fire. A letter of June 14, 1984, signed by the warranty administrator for Club Car stated that the company had authorized a complete changeout of the plugs on carts at Oyster Bay "several

weeks ago." It went on to express urgency that the changeout be made, noting that an intervening accident of a cart catching on fire would not have occurred if the changeout had been made when first authorized. A number of warranty inspection reports and internal memoranda dating from 1983 forward refer to plug failure, broken wires, burned plugs, and plugs shorting out. Internal correspondence reffered to the plug problem as a "mechanical defect." Another letter from Club Car to Lester described the problem as "a defect in your plug." There was also evidence that internal wire breakage in the plug caused the charger "not to operate" or meant it "no longer worked." In December, 1985, Club Car sent its customers a service bulletin, drafted by Lester's president, stating the black and red plugs "may be defective." The bulletin instructed them to check the plugs daily for loose connections, heat, bent or corroded contacts, and exposed wires; and warned that using the battery charger with any of these symptoms "could result in personal injuries, property damage, or a fire."[2]

This evidence, together with other proof that need not burden this opinion, was sufficient to support an inference that the red and black plugs were defective at the time of sale. An article that will not operate or will not work because of a mechanical defect is not merchantable. *See, May-*

---

[2] Lester and Club Car assert the trial judge erred by admitting the service bulletin into evidence. At a pretrial conference Seaside indicated it had documentation that the Consumer Product Safety Commission ordered a "recall" of the battery charger system because of the problem with plugs. Lester and Club Car made a motion to exclude any evidence of the "recall" on the ground that it was inadmissible as a subsequent remedial measure. The court granted the motion. The service bulletin mentioned the "recall" on the second page. Also, the words "Consumer Product Safety Commission" appeared in the upper left hand corner of the first page. Before allowing the exhibit into evidence, the court redacted the bulletin to delete the second page and the reference to the Commission. When the bulletin (Plaintiffs' Exhibit #21) was offered into evidence at trial, neither Lester nor Club Car made a contemporaneous objection. Their only pretrial objection to the bulletin was that it was evidence of the "recall." However, this problem had been solved by redacting the document. We hold the bulletin was properly received as a party admission against interest. *Llewellyn v. Atlantic Greyhound Corp.*, 204 S.C. 156, 28 S.E. (2d) 673 (1944). Contrary to the assertion of Lester and Club Car, it was not evidence of subsequent repair. The bulletin, as seen by the jury, said the plug may be defective and that it could cause property damage or fire. It did not discuss remedial measures taken after the Oyster Bay clubhouse burned. There are two additional reasons why admission of the service bulletin was

*bank v. S.S. Kresge Co., supra.* When an article catches fire during normal use, it may reasonably be inferred that it is defective. *Rose v. Epley Motor Sales,* 288 N.C. 53, 215 S.E. (2d) 573 (1975).

*Cause of Oyster Bay fire.* The evidence recited above also sufficed to create a jury issue on the cause of the Oyster Bay fire. Causation may be proved by circumstantial evidence. *See, Fowler-Barham Ford v. Indiana Lumbermens Mutual,* 45 N.C. App. 625, 263 S.E. (2d) 825 (1980); *Rollins v. Wunda Weve Carpet Co.,* 255 S.C. 1, 177 S.E. (2d) 5 (1970). Seaside adduced evidence of several circumstances supporting an inference that the clubhouse fire was started by a battery charger plug overheating. There had already been a golf cart fire caused by an overheated plug while the cart was on charge in the cart shed. That fire started within ten minutes after the cart was plugged in. The plug involved was a flexible red plug. The clubhouse fire started in the golf cart storage area. It started within ten to twenty minutes after the golf carts had been plugged in for recharging. The plugs on most of the golf carts were flexible red and flexible black

---

not reversible error. First, the rule against admission of subsequent remedial measures does not apply to claims for breach of warranty. *See, Bandstra v. International Harvester Co.,* 367 N.W. (2d) 282 (Iowa 1985); *R.W. Murray Co. v. Shatterproof Glass Corp.,* 758 F. (2d) 266 (8th Cir. 1985). The rule is that proof of after the fact measures cannot be received as evidence of negligence. *Green v. Atlantic Coast Line R. Co.,* 136 S.C. 337, 134 S.E. 385 (1926); *Holman v. City of Orangeburg,* 118 S.C. 361, 110 S.E. 674 (1921). The reason for the rule is that such proof is not relevant, because after the fact measures do not prove the defendant failed to exercise due care *before* the accident happened. *Green v. Atlantic Coast Line R. Co., supra.* In Baron Bramwell's classic formulation, a contrary rule would rest on the logical fallacy that "because the world gets wiser as it gets older, therefore it was foolish before." *Hart v. Lancashire and Yorkshire Railway Company* (1869) 21 L.T.R. (N.S.) 261, 263. Additionally, the rule is a safeguard against the tendency of juries to construe the taking of precautions for the future as a confession of liability for the past. *See, Green v. Atlantic Coast Line R. Co. supra; Holman v. City of Orangeburg, supra.* Second, the bulletin was cumulative to other evidence received without objection. Two witnesses later testified about the bulletin without objection. Club Car's president also testified that after laboratory tests produced flames in the flexible red plug, the company "went into a replacement program for all of those plugs." Lester did not object to this testimony. There was also other evidence, not objected to, that Club Car and Lester had engaged in changeouts and warranty repairs on defective plugs. Therefore, this ground of appeal is without merit. *See, Turner v. Wilson,* 227 S.C. 95, 86 S.E. (2d) 867 (1955); *Honea v. Prior,* 295 S.C. 526, 369 S.E. (2d) 846 (1988) (error in the admission of certain evidence is not prejudicial where similar testimony was received without objection).

plugs. The black plugs had a much greater problem with wires breaking than the red plugs. Laboratory testing by Club Car showed that the flexible red plugs could cause a fire. An expert in forensic engineering and fire investigation with a degree in electrical engineering testified at trial. In his opinion, the fire was started by overheating in the red DC charging cord plug on one of the golf carts.[3]

In the face of this evidence as to the existence of a defect and the cause of the fire, the trial judge properly refused the motions for a directed verdict and for judgment notwithstanding the verdict. There was ample evidence to submit the case to the jury on breach of the implied warranty of merchantability and ample evidence to sustain the jury's verdict against Club Car and Lester.

---

[3] A mechanic employed by Coastal Cars, Randy Rotterman, also testified at trial. Coastal Cars was an authorized warranty repair service for Lester and Club Car. Prior to the clubhouse fire, Rotterman had regularly performed warranty repairs on burned and broken plugs from Oyster Bay. He was familiar with the problem of overheating and burned plugs. He also witnessed a golf cart fire at the course and had repaired burned golf carts. He visited the scene shortly after the clubhouse fire. He was familiar with Lester battery chargers and plugs. During his direct examination, Rotterman testified that after the clubhouse fire, he told Mike Kearns, the golf pro, and Judy Young, a manager at Oyster Bay, that he believed the fire was caused by a battery charger or plug. Kearns and Young also testified to these conversations. Coastal Cars objected to the testimony of all three witnesses on the ground that Rotterman had no basis to give opinion evidence. Lester and Club Car neither joined Coastal's objections nor made their own objections to the testimony of Rotterman and Kearns. Club Car did join Coastal's objection to Young's testimony, but Lester did not. Nothing in the record indicates the litigants stipulated before or during trial that the objection of one defense attorney would be the objection of all. Thus, Lester and Club Car did not preserve the issue of admissibility of the Rotterman and Kearns testimony for appeal. *Edwards v. Grand Lodge K.P. of South Carolina*, 166 S.C. 445, 165 S.E. 181 (1932); *Hall v. Palmetto Enterprises, II, Inc.*, 282 S.C. 87, 317 S.E. (2d) 140 (1984) (where objection has not been raised at trial or passed upon by the trial judge, it will not be considered by the Court of Appeals). In any event, the admission of the testimony was proper. The qualification of a witness to give opinion evidence is a matter within the sound discretion of the trial judge. *Smoak v. Lieberr-America, Inc.*, 281 S.C. 420, 315 S.E. (2d) 116 (1984); *Honea v. Prior, supra; Board of Education v. Zando, Martin & Milstead, Inc.*, 182 W. Va. 597, 390 S.E. (2d) 796 (1990). In view of Rotterman's knowledge, experience, and observation of problems (including fire) with the Lester battery charger and plug, we find no abuse of discretion. *See, Botehlo v. Bycura*, 282 S.C. 578, 320 S.E. (2d) 59 (Ct. App. 1984); *Honea v. Prior, supra; Board of Education v. Zando, Martin & Milstead, Inc., supra* (trial judge did not abuse discretion in allowing a witness not educated as a structural engineer, but who had many years experience in the construction business to testify as an expert). There was ample evidence to send the issue of causation to the jury even if one ignores Rotterman's opinion, as we have done in analyzing this issue.

Because the judgment is affirmable on the cause of action for breach of the implied warranty of merchantability, we need not reach the other issues raised on appeal. *See, Watson v. Sellers*, 299 S.C. 426, 385 S.E. (2d) 369 (Ct. App. 1989) (if a case is submitted to a jury on two or more theories and a general verdict is returned, the verdict will be upheld if it is supported by at least one theory).

## II.

In the alternative, Club Car argues Seaside is barred from recovery for breach of an implied warranty under the so called "sealed container" rule of the North Carolina Products Liability Law, N.C.G.S. § 99B-2(a). The statute provides that no product liability action, except an action for breach of express warranty, will lie against a seller who did not manufacture the product, if the seller acquired and sold the product in a sealed container. The purpose of the rule is to protect from liability a seller, acting as a mere conduit between the buyer and the manufacturer, who receives a defective product from the manufacturer without knowing of the defect or having an opportunity to discover it by reasonable inspection. *See, Sutton v. Major Products Co.*, 91 N.C. App. 610, 372 S.E. (2d) 897 (1988). If the manufacturer furnishes the product to the seller in a sealed container, the seller is under no duty to inspect or test it for latent defects. *Id.* On the other hand, the rule does not apply if the seller actually knows or has reason to know of the defect. *Cockerham v. Ward, supra.* Under North Carolina law, the seller is liable for a manufacturing defect of which it is aware at the time of sale. *See, Nationwide Mutual Insurance Co. v. Weeks-Allen Motor Co.*, 18 N.C. App. 689, 198 S.E. (2d) 88 (1973).

The evidence summarized above showed Club Car knew there was a problem with the battery charger plug at the time it sold the golf carts to Seaside. Additionally, there was evidence that Club Car not only had the opportunity to test for and discover the defect, but actually did test for and discover the defect in the battery charger plug. Moreover, there was testimony that the red plugs furnished to Seaside under warranty replacement in the summer of 1984 were not in a sealed package with the battery charger system, but were received and shipped by themselves. Ac-

cordingly, the "sealed container" rule did not bar Seaside's action against Club Car.[4]

### III.

Lester also makes an alternative argument that Seaside is barred from recovery for breach of implied warranty because it failed to give seasonable notice of the defect under the Uniform Commercial Code, N.C.G.S. § 25-2-607(3)(a) (1986).

The statute provides that where the buyer has accepted a tender of goods under a contract of sale, he must within a reasonable time after he discovers or should have discovered any breach, notify the seller of the breach or be barred from any remedy. Unless the context otherwise requires, the term "seller" means "a person who sells or contracts to sell goods." N.C.G.S. § 25-2-103(1)(d)(1986).

In the context of Section 25-2-607(3), which applies to a buyer who has accepted tender of the goods from the seller, the term "seller" means the immediate seller with whom the buyer has contracted for the goods, not a remote seller who did not tender the goods to the buyer. Thus, this section requires a retail buyer to notify only the retailer seller who tendered the goods to him, not wholesalers, distributors, manufacturers, or others who sold the goods further up the chain of commerce. *See, Firestone Tire and Rubber Co. v. Cannon*, 53 Md. App. 106, 452 A. (2d) 192 (1982); *Goldstein v. G.D. Searle & Co.*, 62 Ill. App. (3d) 344, 19 Ill. Dec. 208, 378 N.E. (2d) 1083 (1978).[5] If the immediate retail seller himself

---

[4] In view of our decision that the "sealed container" rule does not apply in this case, we need not address the applicability of the "apparent manufacturer" rule in *Warzynski v. Empire Comfort Systems, Inc.*, 102 N.C. App. 222, 401 S.E. (2d) 801 (1991). We note, however, that Club Car manufactured the golf carts of which the battery charger was a component. At trial, Lester repeatedly referred to Club Car as a manufacturer buyer of its battery charger.

[5] *See also, Vintage Homes, Inc. v. Coldiron*, 585 S.W. (2d) 886 (Tex. Civ. App. 1979); *Carson v. Chevron Chemical Co.*, 6 Kan. App. (2d) 776, 635 P. (2d) 1248 (1981); *Greenman v. Yuba Power Products, Inc.*, 59 Cal. (2d) 57, 27 Cal. Rptr. 697, 377 P. (2d) 897 (1962); *Santor v. A and M Karagheusian, Inc.*, 44 N.J. 52, 207 A. (2d) 305 (1965). *But see, contra, Wilcox v. Hillcrest Memorial Park of Dallas*, 696 S.W. (2d) 423 (Tex. Civ. App. 1985); *Western Equipment v. Sheridan Iron Works*, 605 P. (2d) 806 (Wyo. 1980); *Morrow v. New Moon Homes, Inc.*, 548 P. (2d) 279 (Alaska 1976) (dictum); White and Summers, UNIFORM COMMERCIAL CODE, § 11-10, (2d) ed. (1980).

bought the goods from another seller further up the chain, he in turn may give written notice of the retail buyer's claim to his seller to preserve any rights over he may have for breach of warranty. N.C.G.S. § 25-2-606(5)(a).

In this case, Section 25-2-607(3)(a) required Seaside, the retail buyer, to notify Club Car, the retail seller who tendered the golf cart battery chargers to it. Seaside did notify Club Car of the breach. As long as Seaside notified Club Car, the statute did not require Seaside to give further notice to Lester, the manufacturer which sold the goods to Club Car, but which was not Seaside's immediate seller.

Assuming Section 25-2-607(3)(a) did apply to Seaside's breach of warranty claim against Lester, the outcome would be the same on the facts of this case. The reason for requiring notification is to inform the seller of any problems with the goods that may give rise to a claim for breach of warranty or alert him that the transaction involving the goods is troublesome and must be watched. *See*, N.C.G.S. § 25-2-607, Official Comment 4. Thus, if the seller is aware the buyer may claim a breach of warranty with respect to the goods prior to the buyer's formal assertion of the claim, the reason for notification has been satisfied. This is simply a specific instance of the general principle that notice is not required to a party who already has knowledge of a fact giving rise to a claim. *See Phillips v. North Carolina Dept. of Transportation*, 80 N.C. App. 135, 341 S.E. (2d) 339 (1986). If the policy behind the notification requirement has not been frustrated, but instead has been fulfilled, the plaintiff's case is sufficient to withstand a directed verdict under Section 25-2-607(3). Whether the seller had reasonable notice in a particular case is a question of fact to be determined by the jury. *See, Maybank v. S.S. Kresge Co., supra; Warren v. Guttanit, Inc.*, 69 N.C. App. 103, 317 S.E. (2d) 5 (1984).

As we have reviewed above in some detail, Lester had actual notice of warranty claims on its flexible black and flexible red plugs. Club Car sent Lester numerous invoices for warranty repairs on defective plugs and also reported to Lester field complaints about plug fires. This evidence created a question for the jury on Lester's notification defense. Thus,

the trial judge correctly denied the motion for a directed verdict on this issue.[6]

## IV.

Lester and Club Car next argue Seaside is barred from recovering its damages because Lester sold the battery chargers under a limited warranty that excluded liability for consequential loss.

A reasonable agreement limiting or modifying contractual or Code remedies for a seller's breach is effective under North Carolina law. *See,* N.C.G.S. § 25-2-719(1)(3); *Billings v. Joseph Harris Company, Inc.,* 290 N.C. 502, 226 S.E. (2d) 321 (1976); *Byrd Motor Lines, Inc. v. Dunlop Tire and Rubber Corp.,* 63 N.C. App. 292, 304 S.E. (2d) 773 (1983). The burden of proving consequential damages have been excluded by agreement rests on the party asserting the exclusion. *See, Kunststoffwerk Alfred Huber v. R.J. Dick, Inc.,* 621 F. (2d) 560 (3rd Cir. 1980).

At trial, the president of Lester admitted there was no evidence that Lester ever notified Oyster Bay of its repair and replacement warranty or any limitation on consequential damages. Moreover, the record does not contain any writing or other evidence that the parties agreed to limit damages for breach of the implied warranty of merchantability. Finally, Lester's trial counsel elicited testimony from the manager of Oyster Bay on cross examination that Lester never gave any written or oral warranties to Oyster Bay. Thus, Lester failed to prove any limitation of consequential damages in this case. Unless a limitation of remedies is made a part of the contract at the time of sale, it is not effective against the buyer. *See, Gold Kist, Inc. v. Citizens & Southern National Bank,* 286 S.C. 272, 333 S.E. (2d) 67 (Ct. App. 1985).

---

[6] Lester argues that the first notification to it of the Oyster Bay clubhouse fire was the institution of this lawsuit. The record suggests otherwise. Coastal Cars and Club Car were notified promptly of the fire; and both sent personnel to investigate the scene within a few days, before it was disturbed or cleared of debris. Coastal Cars was an authorized manufacturer's warranty dealer. There was also testimony that Club Car passed on field complaints to Lester as a matter of course. Moreover, as is discussed above in the text, Lester was notified of field reports and warranty complaints about plug breakage and fire before and after the Oyster Bay fire and well before this suit was commenced.

## V.

Finally, Lester argues that the trial judge erred in refusing its motion to join the subrogated insurance carriers as parties plaintiff pursuant to Rules 17(a) and 19(a), SCRCP. Rule 17(a) provides that every action shall be prosecuted in the name of the real party in interest. Rule 19(a) provides that a person shall be joined as a party to the action (1) if in his absence complete relief cannot be accorded among those already parties or (2) if his absence will leave any persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations.

In South Carolina, an insurer who has paid the insured the entire loss may bring a subrogation action either in its own name or in the name of the insured. *Calvert Fire Insurance Co. v. James*, 236 S.C. 431, 114 S.E. (2d) 832 (1960). As a general rule, however, the insurer may not bring the action in its own name where it has paid only a portion of the loss sustained by the insured. *Id.* In such a case, it may join the insured in bringing the action, but need not do so. Ordinarily, the insured is the only necessary party and the subrogated insurer cannot be compelled to join. *See, Pringle v. Atlantic Coast Line Ry. Co.*, 212 S.C. 303, 47 S.E. (2d) 722 (1948).

The adoption of the South Carolina Rules of Civil Procedure has not changed the law. Where, as here, the named plaintiff has suffered an actionable loss at the hand of the defendant, he is a real party in interest and the requirement of Rule 17(a) is met. It is immaterial that plaintiff may have had the prudence to insure against the loss. It also makes no difference that the insurer may have paid the loss and thus have a real interest in the action as a subrogee. Under the *Calvert* rule, the action may proceed in the name of the insured alone, even if the loss has been fully paid. The action *must* proceed in the name of the insured if, as here, the insurer is only partially subrogated. Accordingly, the trial judge correctly denied the Rule 17(a) motion.[7]

---

[7] We note in passing that during oral argument counsel conceded that her argument about joinder of the insurance companies as parties is against South Carolina precedent. We, of course, are bound by the decisions of the Supreme Court. *Johnston v. Pittman*, 298 S.C. 390, 380 S.E. (2d) 850 (Ct. App. 1989).

We likewise hold the trial judge properly denied the Rule 19(a) motion. Joinder of the insurance companies clearly was not necessary to grant complete relief among the parties. Neither Seaside nor the defendants asserted a claim against the insurance companies. Neither did any claim that was asserted require the presence of the insurance companies in order for a complete and effective remedy to be granted. The only other basis for invoking Rule 19(a) was the possibility that the absence of the insurance companies might subject the defendants to the risk of multiple or inconsistent obligations. However, that risk did not exist in this case for two reasons. First, because the insurers were only partially subrogated, they could not bring a separate action on their own. Thus, if they failed either to join with Seaside in the action or to seek intervention to protect their interest, they would have no other recourse against the defendants. Second, prior to the trial of this action, the insurance carriers stipulated on the record that they would be bound by any judgment in the action. The trial judge accepted this stipulation. Thus, there was no problem of the defendants being subjected to multiple or inconsistent obligations in a later suit. During oral argument, counsel conceded the risk of multiplictious litigation was not a problem in this case. In these circumstances, the purpose of Rule 19(a) was fully satisfied.

Lester calls our attention to a line of federal cases requiring joinder of the subrogated insurance carrier as a party under Rules 17(a) and 19(a), F.R. Civ. P.[8] Lester contends we should interpret South Carolina Rule 19(a) in the same manner, holding that the *Calvert* rule has been superseded by the adoption of Rule 19(a) as so interpreted. We note, however, that federal practice has not been uniform. Federal courts have permitted an action to proceed in the name of the insured plaintiff without joinder of the subrogated insurer.[9] The United States District Court for the Dis-

---

[8] *See, e.g., United States v. Aetna Casualty and Surety Co.*, 338 U.S. 366, 70 S. Ct. 207, 94 L. Ed. 171 (1949); *Virginia Electric & Power Co. v. Westinghouse Electric Corp.*, 485 F. (2d) 78 (4th Cir. 1973), *cert. denied*, 415 U.S. 935, 94 S. Ct. 1450, 39 L. Ed. (2d) 493 (1974); *Pinewood Gin Co. v. Carolina Power & Light Co.*, 41 F.R.D. 221 (D.S.C. 1966); *Lightner v. Duke Power Co.*, 719 F. Supp. 1310 (D.S.C. 1989).

[9] *See, e.g., Luckenbach v. W.J. McCahan Sugar Refining Co.*, 248 U.S. 139, 39 S. Ct. 53, 63 L. Ed. 170 (1918); *Dudley v. Smith*, 504 F. (2d) 979 (5th Cir. 1974); *Acme Markets, Inc. v. Shaffer Trucking, Inc.*, 102 F.R.D. 216 (E.D. Pa.

trict of South Carolina has also permitted the subrogated insurer to stipulate to be bound by the judgment rather than to be joined as a party in the insured's lawsuit. *See, Ralph E. Briggs Textile Co. v. Allied Products Corp.*, C.A. No. 80-2085-3 (D.S.C. filed January 11, 1982). We expressly approve this practice for the courts of this State under South Carolina Rule 19(a).

## VI.

On cross appeal, Seaside asserts the trial judge erred (1) in granting a directed verdict for Coastal Cars; and (2) in failing to award prejudgment interest on its claims under North Carolina law. During oral argument, counsel for Seaside informed the Court that Seaside raised these issues to protect its position in the event the judgment was reversed and the case remanded for a new trial. Counsel further informed us that if the judgment was affirmed, Seaside waived its argument on these points. In view of our disposition of the main appeal, we therefore deem the cross appeal abandoned. In any event, we conclude the trial judge ruled correctly on these issues.

Affirmed.

CURETON, J., and LITTLEJOHN, A.J., concur.

1984); *Kint v. Terrain King Corp.*, 79 F.R.D. 10 (M.D. Pa. 1977); *Braniff Airways, Inc. v. Falkingham*, 20 F.R.D. 141 (D. Minn. 1957). *See also, Travelers Insurance v. Riggs*, 671 F. (2d) 810 (4th Cir. 1982) (pointing to varying federal practice, acknowledging criticism within its own circuit of a rule requiring joinder, and stating that joinder is not mandatory, but may be determined by practical considerations); *Edwards, Inc. v. Arlen Realty*, 466 F. Supp. 505 (D.S.C. 1979) (criticizing involuntary joinder).