**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

PAUL A. DEITER; GARY LEACH;
FRANKLIN L. DEJULIUS,
             *Plaintiffs-Appellants,*

and

LINDA DAMERON KLOTH; BLAINE
COX; DEBRA CUNNINGHAM; ERIC
FERRELL; ELIZABETH STRICKLAND;
RENE GONZALEZ; CLAY TYLER; PETER
HAKLAR; ERIC S. LAZARUS; HAROLD
A. PHILLIPS; PRECISION BILLING
SERVICES, INCORPORATED; MSC
SYSTEMS, INCORPORATED; O'SULLIVAN,
HICKS & PATTON; CARL C. CONRAD;
PAUL L. HOWARD; THOMAS
MCCALEB; VICKI MCCALEB; JAMES
WOODS; LEYTON T. BROWN; GALE          No. 04-1633
RUFFIN; RYAN D. REYNOLDS; JAY S.
QUIGLEY; JOHN W. REDMANN; KEVIN
HUDDELL; ELEADERS, INCORPORATED;
JOHN GLASE; BRUCE WRIGHT; KBS-
NET, SA; EVANGELOS KRITIKOS;
WALTER LORELL; RENALDO VELTRI;
JOHANNA M. MCWHINNEY; JODI
MARKS; JUDD GOODMAN;
SILVERWARE, LIMITED; DATA UNIT
AG; DATACROWN, LIMITED, On
Behalf of Themselves and All
Others Similarly Situated; WAYNE
MIMS; GRAVITY, INCORPORATED; 403
WEST LOOP 820 N; TO THE RESCUE
COMPREHENSIVE COMPUTER SERVICES;

D's PET SUPPLIES, INCORPORATED;
DAVID BACH; THE RUBBRIGHT GROUP;
JAMES M. BURT; RECLAIM CENTER,
INCORPORATED; STEVEN NIELSEN;
RAYMOND PRYOR; SEASTROM
ASSOCIATES LTD; CHRIS CAMPBELL;
DENISE DAVENPORT; SARA
CHEESEMAN; RONALD RODJENSKI;
HAROLD PHILLIPS; MATTHEW W.
O'NEILL; ROBERT WEINKE; IDY
KLEIN; DAVID JAFFEE; AVI MANDEL;
SOUTH DAKOTA ASSOCIATION OF
PLUMBING, HEATING AND COOLING
CONTRACTORS; JOHNNIE MOON;
ROBERT LEE COLEBANK; BRYAN K.
MANSON; FRED LUCE; EDWARD
MICHAEL O'BRIEN; GOLF O'BRIEN
COMPANY; CYNTHIA M. AIKENS;
CLAIR FALGOUST; CARLTON
FALGOUST; MANUAL KNIGHT;
WEBSTER T. KNIGHT; JAMES RUDASIL;
AUBREY BERNARD; GERALDINE GUICE;
WILLIAM BRAND PRYOR; PACIFIC
COAST SYSTEMS; TERI GORDON;
MICHAEL SHEVEKOV; MARTIN HAGAN;
ELHAM SHIRZAI; DAWN BRANDT;
DONALD J. GIANNI; MARIO
TRAFFICHINI; JOHN F. SIEGENTHALER;
CAREN M. MCCALL; LARRY A.
PENIX; PRYCE M. HAYNES, II; JOHN
K. HEIDLAGE; RYAN D. REYNOLDS;
DANIEL C. RAY; GTI SYSTEM
INTEGRATORS; TZIRI FINE; DEREK M.
PRENTICE; KURT C. CARTER;

JAMES T. BREMS; TIM APPELGATE;
JULIE TINKHAM; STEVEN MASTER;
THOMAS INFANTE; TURNER
CORPORATION; JOHN A. SUPERNOVICH;
MARLENE K. SUPERNOVICH;
SHERWOOD; AUTOMATIK DESIGN,
INCORPORATED; STATE OF WEST
VIRGINIA, ex rel Darrell V. McGraw,
Jr., Attorney General; NETSCAPE
COMMUNICATIONS CORPORATION; SUN
MICROSYSTEMS; BE INCORPORATED;
BURST.COM, INCORPORATED; IVAX
CORPORATION; KEITH COOPER;
CONWAY, MACKENZIE & DUNLEAVY,
PC; CHRISTINE BARTON; RHODA
HENNING; KAREN GREEN; RENAE
LUCAS; JOHN ROBY; JOHN DOES 1-50;
MICHAEL LEWIS; HENRY MASCAGNI;
HAYLEY J. GARDNER; STEVE GRUBB;
LINDA STEWART; MURLINE
ADDINGTON; TRAVIS D. MCHANN, JR.;
BILLY LEWIS; BOOKER T. BAILEY, JR.;
JAMES PIGG; ANGELA BRINKLEY;
DELANIOUS HARRIED; GERTRUDE
GREEN; CAMELIA CALVERT; MARY
WYATT; EMMA WALTON; HETHA
GREEN; REALNETWORKS,
INCORPORATED; PRADEEP SUJAN,
                                 *Plaintiffs,*

                   v.

MICROSOFT CORPORATION,
                        *Defendant-Appellee.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, District Judge.
(CA-00-1332-MDL; CA-00-2117-JFM)

Argued: October 28, 2005

Decided: February 7, 2006

Before WIDENER, NIEMEYER, and GREGORY, Circuit Judges.

---

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Widener and Judge Gregory joined.

---

## COUNSEL

**ARGUED:** Daniel A. Small, COHEN, MILSTEIN, HAUSFELD & TOLL, Washington, D.C., for Appellants. David Bruce Tulchin, SULLIVAN & CROMWELL, New York, New York, for Appellee. **ON BRIEF:** Michael D. Hausfeld, Michael W. Byrne, COHEN, MILSTEIN, HAUSFELD & TOLL, Washington, D.C.; Stanley M. Chesley, Robert Heuck, II, WAITE, SCHNEIDER, BAYLESS & CHESLEY, Cincinnati, Ohio; Dianne M. Nast, Michael Nast, RODA & NAST, Lancaster, Pennsylvania; Douglas Thompson, William Butterfield, FINKELSTEIN, THOMPSON & LOUGHRAN, Washington, D.C.; Frank C. Dudenhefer, CUMMINGS, CUMMINGS & DUDENHEFER, New Orleans, Louisiana; James R. Malone, CHIMICLES & TIKELLIS, L.L.P., Birmingham, Alabama; Elwood S. Simon, John P. Zuccarini, ELWOOD SIMON & ASSOCIATES, Birmingham, Alabama; Robert A. Skirnick, MEREDITH, COHEN, GREENFOGEL & SKIRNICK, P.C., New York, New York; William Markovits, MARKOVITS& GREIWE, Cincinnati, Ohio; Lynn L. Sarko, Mark Griffin, Raymond Farrow, KELLER ROHRBACK, L.L.P., Seattle, Washington; Christopher Lovell, LOVELL, STEWART & HALEBIAN, L.L.P., New York, New York; Melissa H. Maxman, DUANE MORRIS, L.L.P., Philadelphia, Pennsylvania; William

Kerschaw, KERSCHAW, CUTTER, RATINOFF & YORK, Sacramento, California; James Patrick Ulwick, KRAMON & GRAHAM, Baltimore, Maryland, for Appellants. Michael F. Brockmeyer, Jeffrey D. Herschman, PIPER RUDNICK, L.L.P., Baltimore, Maryland; Richard J. Wallis, Steven J. Aeschbacher, MICROSOFT CORPORATION, Redmond, Washington; Daryl A. Libow, Richard C. Pepperman, II, Sharon L. Nelles, SULLIVAN & CROMWELL, L.L.P., New York, New York; Charles B. Casper, Peter Breslauer, MONTGOMERY, MCCRACKEN, WALKER & RHOADS, L.L.P., Philadelphia, Pennsylvania, for Appellee.

---

## OPINION

NIEMEYER, Circuit Judge:

In this antitrust litigation, the district court entered an order dated May 27, 2003, certifying a class of consumers seeking damages against Microsoft Corporation allegedly caused by Microsoft's use of monopoly power to overcharge purchasers of Microsoft's Windows operating system software during the period between February 1999 and April 2003. Plaintiffs Paul A. Deiter, Franklin L. DeJulius, and Gary L. Leach, who made their purchases on the Internet or by telephone during the class period, were appointed class representatives. The district court excluded from the class businesses who were direct purchasers of software from Microsoft through its "Enterprise Program" because these "Enterprise customers" purchased bundles of various Microsoft software in large volume and for negotiated prices. The court concluded that the representative parties' claims were not "typical" of the claims that the Enterprise customers might have. *See* Fed. R. Civ. P. 23(a)(3). The court concluded in the alternative that certifying a class consisting of both individuals and Enterprise customers would not be "superior" to other methods of proceeding with the Enterprise customers' potential claims. *See* Fed. R. Civ. P. 23(b)(3).

On appeal of the certification order, we affirm.

I

In the wake of the United States' suit against Microsoft Corporation, in which Microsoft was found to have maintained an illegal

monopoly in the worldwide market for licensing Intel-compatible PC operating systems, *see United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001), dozens of class action lawsuits were filed against Microsoft in courts across the country. The plaintiffs in these actions contended that as a result of Microsoft's violations, they were over-charged for operating system software and applications software. They sought damages and injunctive relief under the Clayton and Sherman Acts. *See* 15 U.S.C. § 2, 15, 26. On April 25, 2000, the Judicial Panel on Multidistrict Litigation transferred all such cases pending in federal district courts to the District of Maryland pursuant to 28 U.S.C. § 1407. Shortly thereafter, 39 plaintiffs filed a superseding consolidated complaint in which they purported to represent multiple classes of consumers. Following Microsoft's motion to dismiss or for summary judgment, the district court dismissed the damages claims of all plaintiffs who did not buy software *directly* from Microsoft pursuant to *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). The court also dismissed the claims of foreign plaintiffs under the Foreign Trade Antitrust Improvements Act of 1982, 15 U.S.C. § 6a.

On September 5, 2001, the remaining plaintiffs filed a motion with the district court to certify four classes of persons who had "acquired" Microsoft operating system or applications software anytime after November 10, 1995. Two purported classes were defined by those requesting injunctive relief — one for direct purchasers of operating systems and one for direct purchasers of applications software. The other two were defined by those claiming monetary damages — again, one for operating systems and one for applications software. By order dated May 27, 2003, the district court certified a single class under Federal Rule of Civil Procedure 23(b)(3) for claims seeking monetary damages, which it defined as:

> All persons and entities in the United States who acquired directly from Microsoft through the shop.microsoft.com Web site (by ordering on line or by calling the toll free number provided there) a license, other than for re-sale or re-licensing, for Microsoft single-user operating system software, including upgrades, compatible with x86 computers, but not including Windows 2000 or Windows NT, from February 22, 1999 through April 30, 2003.

The court designated Paul Deiter, Franklin DeJulius, and Gary Leach as representative parties. Each had acquired a copy of Windows operating system from Microsoft's shop.microsoft.com website in 1999 or 2000. In its order, the court denied the plaintiffs' motion for class certification in all other respects. By order dated July 28, 2003, the court expanded the scope of the class "to include persons who purchased Microsoft operating system software as 'Full Packaged Product' in direct marketing campaigns during the class period."

In defining the class, the district court rejected the plaintiffs' request to certify a class of persons who acquired *applications* software because none of the class representatives ever purchased such software from Microsoft. The court found that the different software programs were sold in different markets. Because the liability and damage issues presented by claims arising out of different markets were inherently different, the court held that the representatives who only purchased *operating system* software did not have claims that were typical of the claims belonging to purchasers who bought Microsoft *applications* software. *See* Fed. R. Civ. P. 23(a)(3).

The court also excluded from the class businesses that purchased large quantities of Microsoft software licenses through Microsoft's Enterprise Program. Under the Enterprise Program, which began on October 1, 2001, Microsoft sold software licenses directly to customers who wanted to purchase at least 250 licenses for its operating system or applications software. In making these sales, Microsoft negotiated individual three-year agreements to provide both software and upgrades to the software at lower prices. The district court concluded that the representative parties could not represent the Enterprise customers because the Enterprise customers purchased "licenses of a myriad of software products through an entirely different line of distribution within Microsoft." As with the applications software purchases, the court based its decision on Rule 23(a)(3). The court held in the alternative that the class action method was not "superior to other available methods for the fair and efficient adjudication of the [Enterprise customers'] controvers[ies]," Fed. R. Civ. P. 23(b)(3), because the Enterprise customers "have substantial claims" and, hence, have an incentive to file individual actions. The court noted in addition that no Enterprise customer had ever sued Microsoft for antitrust violations, concluding therefore that the class action device

would not be "a valuable management device" for the efficient resolution of numerous lawsuits.

Following class certification, Microsoft and the class settled their disputes, and the district court approved the settlement on April 16, 2004. The only issue presented on appeal is whether the district court erroneously restricted the scope of the class in its May 27, 2003 order to exclude Enterprise customers.

II

We review class certification orders for abuse of discretion. *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 424 (4th Cir. 2003).

The plaintiffs contend that the district court abused its discretion in concluding that they did not satisfy the typicality requirement of Federal Rule of Civil Procedure 23(a)(3) with respect to the claims of Enterprise customers. They argue that the district court's reliance on the distinction between plaintiffs' purchases and the Enterprise customers' purchases was irrelevant. They assert:

> The only relevant fact . . . is that both the named plaintiffs and the Enterprise customers purchased operating system software directly from Microsoft. Thus, both have damages claims against Microsoft under federal antitrust law for unlawful monopolization. This identity of claims satisfies Rule 23(a)(3)'s typicality requirement.

Microsoft contends that plaintiffs' claims were not typical of the potential claims of Microsoft's Enterprise customers. They assert:

> Enterprise customers [are] large businesses that individually negotiate high-volume, long-term deals with Microsoft for a number of very different software products. Proof that the class representatives were overcharged would by no means necessarily establish that Enterprise customers were overcharged, and Enterprise customers should not have their claims put in the hands of "representatives" who lack the knowledge or incentive to pursue them.

The typicality requirement of Rule 23(a)(3) is but one of a number of threshold requirements that plaintiffs must satisfy to justify their representation of a class. Other portions of Rule 23 require plaintiffs to demonstrate at the outset that the class members whom they purport to represent are so numerous that traditional joinder is impractical; that their claims or defenses present common issues of law or fact; and that they are able to represent the class members' interests fairly and adequately. *See* Fed. R. Civ. P. 23(a)(1), (2), (4). Even when these requirements are met, the plaintiffs must also demonstrate fulfillment of the requirements of Rule 23(b)(1), 23(b)(2), or 23(b)(3). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) ("In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)"); *id.* at 621 (same).

The class action device, which is "designed as an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only," *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982) (internal quotation marks omitted), allows named parties to represent absent class members when, *inter alia*, the representative parties' claims are *typical* of the claims of every class member. To be given the trust responsibility imposed by Rule 23, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 156 (internal quotation marks omitted). That is, "the named plaintiff's claim and the class claims [must be] so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* at 157 n.13. The essence of the typicality requirement is captured by the notion that "as goes the claim of the named plaintiff, so go the claims of the class." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998) (quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (internal quotation marks omitted)).

The typicality requirement goes to the heart of a representative parties' ability to represent a class, particularly as it tends to merge with the commonality and adequacy-of-representation requirements. *See Amchem*, 521 U.S. at 626 n.20; *Gen. Tel.*, 457 U.S. at 157 n.13. The representative party's interest in prosecuting his own case must simultaneously tend to advance the interests of the absent class members.

For that essential reason, plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim. That is not to say that typicality requires that the plaintiff's claim and the claims of class members be perfectly identical or perfectly aligned. But when the variation in claims strikes at the heart of the respective causes of actions, we have readily denied class certification. *See, e.g.*, *Broussard*, 155 F.3d at 340-44 (holding that plaintiffs could not sustain a class action based on a theory of collective breach of contract because variations in the claims undermined typicality); *Boley v. Brown*, 10 F.3d 218, 223 (4th Cir. 1993) (affirming the district court's denial of class certification when the resulting harm was dependent on considerations of each class member's unique circumstances). In the language of the Rule, therefore, the representative party may proceed to represent the class only if the plaintiff establishes that his *claims or defenses* are "typical of the *claims or defenses* of the class." Fed. R. Civ. P. 23(a)(3) (emphasis added).

Thus, it follows that the appropriate analysis of typicality must involve a comparison of the plaintiffs' claims or defenses with those of the absent class members. To conduct that analysis, we begin with a review of the elements of plaintiffs' *prima facie* case and the facts on which the plaintiff would necessarily rely to prove it. We then determine the extent to which those facts would also prove the claims of the absent class members.

To establish an antitrust violation, a plaintiff would have to prove "(1) a violation of the antitrust law, (2) direct injury to the plaintiff from such violations, and (3) damages sustained by the plaintiff." *Windham v. Am. Brands*, 565 F.2d 59, 65 (4th Cir. 1977). Specifically, to prove a violation of § 2 of the Sherman Act, which prohibits monopolization or attempted monopolization of a relevant market, a plaintiff would have to demonstrate that the defendant possesses monopoly power in the relevant market and "willfully acquired or maintained that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Cavalier Telephone v. Verizon, Virginia*, 330 F.3d 176, 183 (4th Cir. 2003) (internal quotation marks and citation omitted); *Advanced Healthcare Servs., Inc. v. Radford Community Hosp.*, 910 F.2d 139, 147 (4th Cir. 1990). Finally, the plaintiff would have to

prove that antitrust injury, *i.e.* injury to competition, that resulted from the illegal acquisition or maintenance of monopoly power in that the plaintiff was overcharged in its purchases because of the injury to or absence of competition. *Advanced Healthcare*, 910 F.2d at 147.

Describing how proof of their claims would be typical of the proof of the claims of absent class members, the plaintiffs asserted to the district court:

> The representative plaintiffs, like the absent class members, acquired Microsoft licenses for operating systems or office suite software for their own use at a price determined by Microsoft. All class members, including the named plaintiffs, were injured because the price they paid was artificially inflated as a result of Microsoft's monopolization of the relevant markets in violation of § 2 of the Sherman Act.

J.A. 1421-22. But this argument was made at an unacceptably general level. Examining typicality at a more directly relevant level, the district court found meaningful differences between plaintiffs' claims and those of Enterprise customers. The plaintiffs purchased operating system software in 1999 and 2000 from Microsoft either on-line or by telephone, paying the fixed prices that Microsoft posted as part of its offer to sell. They claimed that they purchased individual copies of Windows at Microsoft's "estimated retail price," which they contended was as much as twenty percent higher than the prices charged by retail stores and other on-line retailers. They argue that Microsoft could demand and receive that price because of its monopoly power.

In proving their case, however, the plaintiffs would hardly prove a case on behalf of Microsoft's Enterprise customers. These customers, who purchased at least 250 licenses, did not purchase on-line or by telephone, nor did they pay prices established in advance by Microsoft. The prices that Enterprise customers paid were negotiated and, as a consequence, were both discounted and unique to each transaction. In addition, Enterprise customers purchased different products: their agreements were three-year deals that included upgrades for the software covered by their agreements and sometimes included applications software in addition to operating system soft-

ware. Thus, plaintiffs' proof that Microsoft overcharged them would hardly prove that Microsoft overcharged the Enterprise customers.

Moreover, to prove that Microsoft overcharged the Enterprise customers would require new and different proof because the Enterprise customers were able to negotiate their deals in a different competitive context from that involving the plaintiffs. Thus, with respect to the Enterprise deals, the plaintiffs would have to define and prove a relevant market and then injury to competition in *that* market. The plaintiffs themselves seem to recognize a difference in this proof for they have alleged different markets for the sale of operating system software and applications software. But the differences may be even greater because evidence would be required to demonstrate how Microsoft's monopoly powers caused Enterprise customers to be overcharged in *negotiated* deals involving bundles of products otherwise sold in two different markets. Because of these factual dissimilarities as to market, injury to competition, and causation, the district court's conclusion that there would be a substantial gap between what plaintiffs proved for their individual cases and what would be required proof for the Enterprise customers' claims was a reasonable one.

Thus, in concluding that the representative parties' claims are not typical of the claims of Microsoft's Enterprise customers, the district court did not err, and in refusing to include Enterprise customers as part of the certified class represented by these plaintiffs, the court did not abuse its discretion. *See Gunnells*, 348 F.3d at 424.

Because we affirm the district court's reliance on Rule 23(a)(3) to deny the representative parties' representation of Enterprise customers, we do not reach the additional reason given by the district court based on Rule 23(b)(3), that a class action would not be superior over other methods of proceeding.

*AFFIRMED*