Cindy THOMAS, F. Renee Gaters, and Loren Chamberlain, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

LOUISIANA–PACIFIC CORPORATION and ABT Building Products Corporation, a/k/a ABTCO, Defendants.

C.A. No. 2:05–1515–PMD.

United States District Court, D. South Carolina, Charleston Division.

June 5, 2007.

506

Jeffrey S. Tibbals, Paul A. Dominick, Nexsen Pruet Jacobs Pollard and Robinson, Charleston, SC, Justin O'Toole Lucey, Justin O'Toole Lucey Law Firm, Mt Pleasant, SC, for Plaintiffs.

C. Allen Gibson, Jr., James E. Weatherholtz, Buist Moore Smythe and McGee, Charleston, SC, Michael Isaku Begert, Bingham McCutchen San Francisco, CA, for Defendants.

### ORDER

PATRICK MICHAEL DUFFY, District Judge.

This matter is before the court upon Plaintiffs' Motion for Class Certification. A hearing was held on June 4, 2007 at 10:00 a.m. For the reasons set forth herein, the court grants Plaintiffs' Motion for Class Certification.

### BACKGROUND

Named Plaintiffs Cindy Thomas ("Thomas"), F. Renee Gaters ("Gaters"), and Loren Chamberlain ("Chamberlain") own real estate in Charleston County, South Carolina. (Am.Compl. ¶¶ 1–3.) Plaintiffs allege their homes were constructed with an exterior trim product that was "designed, manufactured, marketed, sold and distributed by the Defendants." (Am.Compl. ¶ 4.) Specifically, Plaintiffs assert Defendants designed, manufactured, and sold a manufactured wood exterior trim product known as TrimBoard "for use as fascia, soffit, corner board, window trim, door trim and general exterior use on homes, apartments, condominiums, buildings and other structures." (Am.Compl. ¶ 12.) According to Plaintiffs, Defendants "represented and marketed their TrimBoard product as being a low maintenance product that would save on painting costs and [was] superior to real wood trim products." (Am. Compl. ¶ 13.) Despite the fact that Defendants are alleged to hold themselves out as "being knowledgeable in the design and manufacture of exterior building products and as being providers of quality building products" (Am.Compl. ¶ 11), Plaintiffs allege that TrimBoard "is defective and fails to perform as intended because it prematurely deteriorates, rots, swells, buckles, splits, checks, cracks, delaminates, absorbs water, w[ar]ps, and/or bulges under normal conditions and expo-

sure; causes consequential water and structural damage; and promotes the growth of health-threatening mold, mildew, fungi, termites and other insects in the structures on which it is installed." (Am.Compl. ¶ 14.) Plaintiffs further allege that Defendants' failure to label TrimBoard, combined with their knowledge that most end-users will not buy TrimBoard directly from Defendants, constitutes an attempt to avoid warranty claims. (Am.Compl. ¶ 20.) Plaintiffs thus bring action against Defendants, asserting the following causes of action: (1) breach of express warranty; and (2) breach of implied warranties of merchantability, habitability, and fitness for particular purpose. *(See* Am. Compl.) [1]

On March 15, 2007, Plaintiffs filed a Motion for Class Certification. Plaintiffs request the court certify the class as follows:

All persons, firms, corporations, and other entities who own homes, apartments, condominiums, buildings and other structures in Charleston County, South Carolina on which Defendants' TrimBoard product is installed, excluding any structure owned by any federal, state or local government, and any structures owned by Defendants or any of their subsidiaries, affiliates or employees.

(Mem. in Supp. at 5.) Plaintiffs "seek[ ] a class designation as an opt-out class, unless the Court deems otherwise." (Mem. in Supp. at 5.)

### *STANDARD*

■ Plaintiff carries the burden of establishing each of the requirements for a class action are satisfied. *See Thorn v. Jefferson–Pilot Life Ins. Co.,* 445 F.3d 311, 321 (4th Cir.2006); *Gariety v. Grant Thornton, LLP,* 368 F.3d 356, 362 (4th Cir.2004) ("The plaintiffs who propose to represent the class bear the burden of demonstrating that the requirements of Rule 23 are satisfied."); *Lienhart v. Dryvit Sys., Inc.,* 255 F.3d 138, 146 (4th Cir.2001) ("The party seeking class cer-

tification bears the burden of proof."); *Windham v. Am. Brands, Inc.,* 565 F.2d 59, 65 n. 6 (4th Cir.1977) (en banc) ("It is well-settled in this jurisdiction that the proponent of class certification has the burden of establishing the right to such certification under Rule 23.").

■ At this stage, the class representative need not establish its case on the merits. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Nevertheless, some preliminary inquiry into the merits may be necessary for an intelligent determination of whether to certify the class. *See Shelton v. Pargo, Inc.,* 582 F.2d 1298, 1312–13 (4th Cir.1978). Questions regarding the certification of a class action are left to the sound discretion of the district court and any such decision by the court will only be reversed upon a showing of abuse of that discretion. *Stott v. Haworth,* 916 F.2d 134, 139 (4th Cir.1990).

### *ANALYSIS*

As stated by the Fourth Circuit in *Gunnells v. Healthplan Services, Inc.,* 348 F.3d 417 (4th Cir.2003),

Class actions must meet several criteria. First, the class must comply with the four prerequisites established in Rule 23(a): (1) numerosity of parties; (2) commonality of factual and legal issues; (3) typicality of claims and defenses of class representatives; and (4) adequacy of representation. Fed.R.Civ.P. 23(a). Second, the class action must fall within one of the three categories enumerated in Rule 23(b)....

*Gunnells,* 348 F.3d at 423. As in Gunnells, the Plaintiffs in the case sub judice seek to proceed under Rule 23(b)(3), which provides,

the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available meth-

---

1. The original Complaint also sought injunctive relief, enjoining Defendants from continuing to market and sell TrimBoard in Charleston County. *(See* Compl.) However, this cause of action was omitted in the Amended Complaint filed on March 19, 2007. According to Plaintiffs, the

reason for the amendment is that injunctive relief is unnecessary, as "discovery in this case has revealed that TrimBoard has not been sold to distributors in Charleston County since 2001, nor in South Carolina since 2005." (Mem. in Supp. at 2.)

ods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3).

## A. Numerosity of the Parties

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). "There is no mechanical test for determining whether in a particular case the requirement of numerosity has been satisfied. The issue is one primarily for the District Court, to be resolved in light of the facts and circumstances of the particular case." *Kelley v. Norfolk & W. Ry. Co.*, 584 F.2d 34, 35 (4th Cir.1978). In *Kelley*, the Fourth Circuit found no error in the district court's determination that the numerosity requirement was not satisfied in a discrimination case where there were sixty-seven black employees, only eight of which were qualified for promotion, and there were twenty-five promotions during the time period in question. *Id.* at 35–36.

While there does not appear to be a specific number above which numerosity will be satisfied and below which numerosity will not be satisfied, "it is well settled that one or two will not meet the numerosity test." *Brown v. Eckerd Drugs, Inc.*, 669 F.2d 913, 917 (4th Cir.1981) (citing *Doctor v. Seaboard Coast Line R.R. Co.*, 540 F.2d 699 (4th Cir.1976)). In *Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177 (4th Cir.1993), the Fourth Circuit affirmed the district court's approval of a class with 480 potential class members,

stating this number "would easily satisfy the numerosity requirement." *Central Wesleyan*, 6 F.3d at 183. Furthermore, the United States District Court for the District of South Carolina found that because "a lawsuit with potentially one hundred and eighty plaintiffs presents logistical problems that make the practicality of permissive joinder dubious," class treatment "would streamline the lawsuit" and be "a much more practical legal vehicle" for the suit. *Bates v. Tenco Servs., Inc.*, 132 F.R.D. 160, 163 (D.S.C.1990).

■ Plaintiffs assert they meet the numerosity requirement because TrimBoard has been installed on more than 1,000 homes in Charleston County. (Am.Compl. ¶ 23.) In Defendants' Responses to Plaintiff's Requests for Admission, the following exchange appears:

8. Admit that since the year 2000, LP [(Louisiana–Pacific and ABTCO)] has received approximately 800 complaints ab[o]ut the TrimBoard product, the majority of which have originated in the greater Charleston area.

**Response: Denied. LP admits that, since the year 2000, it has logged more than 800 warranty claim entries relating to the TrimBoard product, many of which have been denied for various reasons.**

(Mot. for Class Certification Ex. A.) Plaintiffs assert that approximately half of these warranty claims originated in South Carolina and that more than 400,000 square feet of TrimBoard has been sold by Defendants to distributors and builders in Charleston County.[2] According to Plaintiffs, "[i]n this case, where there are at least a thousand, and likely many more, individuals in Charleston County, South Carolina have defective TrimBoard on their homes, there are clearly numerous plaintiffs to satisfy the numerosity

---

**2.** Plaintiffs attach a report of Defendants' "Sales by Ship To Customer," and the report is tailored to show only South Carolina purchases. The report shows purchases of TrimBoard from, *inter alia*, Stock Building Supply in Charleston, Buck Lumber & Building in Charleston, Lowes # 565 in North Charleston, ABC Supply Company in North Charleston, Best Distributing Company in

Charleston, Guy C. Lee Building Matter in Mount Pleasant, and Pelican Building Center on Johns Island. *(See* Mot. for Class Certification Ex. B.) An affidavit submitted by Defendants, however, indicates that a total of 489,000 square feet of TrimBoard was sold to distributors in Charleston County between 1994 and 2002. *(See* Sullivan Aff. ¶ 7.)

requirement for class certification." (Mem. in Supp. at 9.)

Defendants, on the other hand, argue Plaintiffs cannot satisfy the numerosity requirement. They argue the number of potential claimants "is not nearly as high as the Plaintiff[s] suggest[ ]." (Mem. in Opp'n at 18.) Defendants assert their consultant conducted a survey of the homes built in Charleston County between 1994 and 2002 in order to determine what products were being used, and the results of that survey suggests that between 290 and 467 homes in Charleston County are clad with TrimBoard, and that the actual number is probably closer to 300. (Mem. in Opp'n Ex. J.) Defendants also present evidence that Defendants' warranty claims office received 171 TrimBoard warranty claims in Charleston County through the date of March 28, 2007. (Tilley Aff. ¶ 4.)

The court finds Plaintiffs have satisfied the numerosity requirement of Rule 23(a). Although Defendants contest numerosity, Defendants in substance simply argue Plaintiffs' estimate is incorrect. *(See* Mem. in Opp'n at 18.) Even assuming the accuracy of Defendants' estimates, the numerosity requirement is satisfied; evidence presented by Defendants suggests 300 homes in Charleston County are clad with TrimBoard. Even excluding those 171 homes for which warranty claims were filed, the number of potential plaintiffs is approximately 130. This number satisfies the requirement of numerosity. *See Holsey v. Armour & Co.,* 743 F.2d 199, 217 (4th Cir.1984) (upholding the district court's finding that "Armour employed between 46 and 60 black employees annually since 1971, and this large number of employees potentially affected by Armour's challenged practices made joinder impracticable"); *Ganesh, LLC v. Computer Learning Ctrs., Inc.,* 183 F.R.D. 487, 489 (E.D.Va.1998) (citing *Korn v. Franchard Corp.,* 456 F.2d 1206, 1209 (2d Cir.1972), for the proposition that "[a]s few as forty investors can [satisfy the numerosity requirement] in an appropriate case"); *cf. Roman v. ESB, Inc.,* 550 F.2d 1343, 1349 (4th Cir.1976) (affirming the district court's refusal to certify class when 44 were already named plaintiffs and class certification would add eleven persons).

**B.  Adequacy of Representation**

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). "The principal factor in determining the adequacy of class representatives is whether the plaintiffs have the ability and commitment to prosecute the action vigorously. This inquiry involves two issues: (i) whether plaintiffs have any interest antagonistic to the rest of the class, and (ii) whether plaintiffs' counsel are qualified, experienced and generally able to conduct the proposed litigation." *S.C. Nat'l Bank v. Stone,* 139 F.R.D. 325, 329–30 (D.S.C.1991) (internal quotation marks and citations omitted). "The adequacy of plaintiffs' counsel, like that of the individual plaintiffs, is presumed in the absence of specific proof to the contrary." *Id.* at 330–31 (citing *Falcon v. Gen. Tel. Co.,* 626 F.2d 369, 376 n. 8 (5th Cir.1980), *vacated on other grounds,* 450 U.S. 1036, 101 S.Ct. 1752, 68 L.Ed.2d 234 (1981)).

Plaintiffs argue these requirements are satisfied because "Defendants cannot point to any material conflict between the named Plaintiff and the class she seeks to represent." (Mem. in Supp. at 14.) Plaintiffs also points to Thomas' Declaration, in which she states she will aggressively pursue the action on behalf of herself and other class members. (Thomas Decl. ¶ 5.)

In their Response in Opposition to Plaintiff's Motion for Class Certification, Defendants do not seem to argue Plaintiffs do not satisfy the requirements of Rule 23(a)(4). As Plaintiffs point out, Defendant has not pointed to any conflict between Plaintiffs and the named class. Furthermore, Plaintiff Thomas has agreed to aggressively pursue this litigation. Lastly, Defendants do not argue the impropriety of Plaintiffs' counsel, and "courts generally hold that the employment of competent counsel assures vigorous prosecution." *S.C. Nat'l Bank,* 139 F.R.D. at 331. The court thus finds the requirements of Rule 23(a)(4) satisfied.

**C.  Typicality of Claims and Defenses of Class Representatives**

Rule 23(a)(3) requires that the claims or defenses of the representative parties must

be typical of the claims or defenses of the class. *See* Fed.R.Civ.P. 23(a)(3). "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of the Sw. v. Falcon,* 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (internal quotation marks omitted). The essence of this requirement "is captured by the notion that 'as goes the claim of the named plaintiff, so go the claims of the class.'" *Deiter v. Microsoft Corp.,* 436 F.3d 461, 466 (4th Cir.2006) (quoting *Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 340 (4th Cir.1998)). Of this requirement, the Fourth Circuit stated,

> The typicality requirement goes to the heart of a representative parties' ability to represent a class, particularly as it tends to merge with the commonality and adequacy-of-representation requirements. The representative party's interest in prosecuting his own case must simultaneously tend to advance the interests of the absent class members. For that essential reason, plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim. That is not to say that typicality requires that the plaintiff's claim and the claims of class members be perfectly identical or perfectly aligned. But when the variation in claims strikes at the heart of the respective causes of actions, we have readily denied class certification. *See, e.g., Broussard,* 155 F.3d at 340–44 (holding that plaintiffs could not sustain a class action based on a theory of collective breach of contract because variations in the claims undermined typicality); *Boley v. Brown,* 10 F.3d 218, 223 (4th Cir.1993) (affirming the district court's denial of class certification when the resulting harm was dependent on considerations of each class member's unique circumstances). In the language of the Rule, therefore, the representative party may proceed to represent the class only if the plaintiff establishes that his *claims or defenses* are "typical of the *claims or defenses* of the class." Fed.R.Civ.P. 23(a)(3) (emphasis added).

> Thus, it follows that the appropriate analysis of typicality must involve a comparison of the plaintiffs' claims or defenses with those of the absent class members. To conduct that analysis, we begin with a review of the elements of plaintiffs' *prima facie* case and the facts on which the plaintiff would necessarily rely to prove it. We then determine the extent to which those facts would also prove the claims of the absent class members.

*Deiter,* 436 F.3d at 466–67 (some citations omitted).[3]

In *Deiter,* the plaintiffs, individuals who purchased software directly from Microsoft, alleged they had been overcharged as a result of Microsoft's illegal monopoly. *Id.* at 464. In ruling on a motion for class certification, the district court excluded from the class businesses who were direct purchasers of the software through its "Enterprise Program" because "these 'Enterprise customers' purchased bundles of various Microsoft software in large volume and for negotiated prices." *Id.* The district court concluded the representative parties' claims were not typical of the claims the Enterprise customers might have. *Id.* The Fourth Circuit affirmed; although the plaintiffs argued on appeal that they, like the Enterprise customers, were overcharged because of Microsoft's monopoly, the Fourth Circuit found this argument "was made at an unacceptably general level." *Id.* at 467. The court noted that in proving their case, the plaintiffs did not prove a case on behalf of the Enterprise customers because (1) the Enterprise customers' prices were negotiated and therefore unique to each transaction, and (2) Enterprise customers purchased different products. *Id.* at 468. In order to prove the Enterprise customers were overcharged,

---

**3.** In *Broussard,* the Fourth Circuit discussed five variations in the franchisees' factual and legal arguments to show "that this case failed to present common questions of law or fact, and that plaintiffs' claims were anything but typical of the claims of the class." *Broussard,* 155 F.3d at 340.

One of these five variations resulted from the fact that "plaintiffs simply cannot advance a single collective breach of contract action on the basis of multiple different contracts," as many of the plaintiffs were subject to different franchise agreements. *Id.*

"plaintiffs would have to define and prove a relevant market and then injury to competition in *that* market." *Id.*

▮▮ Plaintiffs bring two causes of action: (a) breach of express warranty and (b) breach of implied warranties of merchantability, habitability, and fitness for particular purpose. In order to establish a cause of action for breach of express warranty, a plaintiff must prove (1) the existence of an express warranty, (2) breach of an express warranty, and (3) damages proximately caused by the breach. *See Cox House Moving, Inc. v. Ford Motor Co.*, No. 7:06–1218–HMH, 2006 WL 2303182, *4 (D.S.C. Aug.8, 2006) (citing *Besse v. Gen. Motors Corp.*, 317 F.Supp.2d 646, 654 n. 7 (D.S.C.2004)); *see also* S.C. CODE § 36–2–313. To recover for breach of the implied warranty of merchantability, a plaintiff must prove (1) a merchant sold goods; (2) the goods were not "merchantable" at the time of sale; (3) the plaintiff or his property was injured by such goods; (4) the defect or other condition amounting to a breach of the implied warranty of merchantability proximately caused the injury; and (5) the plaintiff so injured gave timely notice to the seller. *Seaside Resorts, Inc. v. Club Car, Inc.*, 308 S.C. 47, 52–53, 416 S.E.2d 655, 659–60 (Ct.App.1992) (applying North Carolina law). Although the court in *Seaside Resorts* was applying North Carolina law, South Carolina's statute concerning the implied warranty of merchantability is almost identical to the North Carolina statute. *See* S.C.CODE § 36–2–314. Plaintiffs also assert Defendants breached the implied warranty of habitability. According to the South Carolina Supreme Court, "the seller of a new house impliedly warrants the habitability of the house.... The warranty springs from the sale. The determining factor is not whether the defendant actually builds the defective house, but that he places it, by the initial sale, into the stream of commerce." *Kirkman v. Parex, Inc.*, 369 S.C. 477, 482–83, 632 S.E.2d 854, 856–57 (2006) (internal quotation marks omitted). Lastly, Plaintiffs assert Defendants breached the implied warranty of fitness for a particular purpose. "[A]n implied warranty of fitness for a particular purpose arises if the vendor knows when the contract is formed that the purchaser is rely-

ing on the vendor's skill or judgment in furnishing the goods." *Myrtle Beach Pipeline Corp. v. Emerson Elec. Co.*, 843 F.Supp. 1027, 1036 (D.S.C.1993); *see also* S.C.CODE § 36–2–315.

South Carolina law requires that where a tender has been accepted,

> the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy; however, no notice of injury to the person in the case of consumer goods shall be required.

S.C. CODE § 36–2–607(3)(a). The Supreme Court of South Carolina considered this provision in *Hitachi Electronic Devices (USA), Inc. v. Platinum Technologies, Inc.*, 366 S.C. 163, 621 S.E.2d 38 (2005). The case involved a breach of contract action for the sale of goods, and the sales contract, which contained a warranty of performance, also provided for a particular remedy in the event of a breach: repair or replace. *Id.* at 166, 621 S.E.2d at 39. Approximately one year after taking delivery, the buyer returned the goods and demanded a refund; when the seller refused, the buyer brought a breach of contract action. *Id.* at 166, 621 S.E.2d at 39. The lower court found the buyer was unable to maintain the action because the buyer failed to give notice of breach to the seller within a reasonable time after taking delivery. *Id.* at 166, 621 S.E.2d at 39. The Court of Appeals reversed, affirming the master's holding that the buyer accepted the goods and failed to give seasonable notice of the breach, but disagreeing with the master's conclusion that the failure to give seasonable notice prevented the buyer from maintaining the action. *Id.* at 167, 621 S.E.2d at 39. The issue before the South Carolina Supreme Court was whether the buyer's failure to give timely notice of breach to the seller prevented the buyer from pursuing the contractual remedy intended by the parties to be a substitute for the UCC's article 2 default remedies. *Id.* at 167, 621 S.E.2d at 39–40. The court noted there was no dispute that article 2 applied, that the buyer accepted the goods, and the buyer failed to seasonably notify the seller of the breach. *Id.* at 167, 621 S.E.2d

at 40. The South Carolina Supreme Court reversed the Court of Appeals:

> The Buyer's failure to give seasonable notice of breach prevents the Buyer from pursuing the repair-or-replace remedy provided in the parties' contract....
>
> [A]rticle 2 states that a buyer who has failed to give seasonable notice of breach is "barred from any remedy." § 36–2–607(3)(a).... The phrase "any remedy" ... is plain and unambiguous; it encompasses all potential remedies for breach of an article 2 contract. There is no dispute that the repair-or-replace remedy was crafted as a remedy for breach of the parties' article 2 contract, so the Buyer's failure to comply with section 36–2–607(3)(a) bars Buyer from this remedy.

*Id.* at 168, 621 S.E.2d at 40.

■ Plaintiffs argue typicality is satisfied because the claims for (1) breach of express warranty and (2) breach of implied warranties of merchantability and fitness for a particular purpose "arise out of a common course of conduct on the part of the Defendants with regard to their development, manufacture, marketing, and distribution of TrimBoard. The actions complained of were in furtherance of the Defendants' goal to make a profit and, accordingly, were the same vis á vis the entire class." (Mem. in Supp. at 12.) Furthermore, Plaintiffs argue that the potential need for individualized damage determinations does not preclude certification and that Defendants' argument that TrimBoard was not the proximate cause of Plaintiffs' damages favors certification. (Mem. in Supp. at 12–13.)

Defendants assert the typicality requirement is not satisfied because individualized inquiries will be necessary. Defendants states, "[B]ased on a given claimant's specific level of participation in the warranty claims process, warranty defenses may not apply." (Resp. in Opp'n at 17.) Defendants note that Plaintiff Thomas did not complete the warranty process, "substantively differentiating her claim from other class members who did. Her failure to file a warranty claim may be a bar to her bringing these claims altogether, and Defendants are entitled to investigate

and develop that issue in each case." (Resp. in Opp'n at 17.)

Following the approach in *Deiter,* the court must examine the elements of Plaintiffs' *prima facie* case and determine the extent to which those facts also prove the claims of the absent class members. *Deiter,* 436 F.3d at 467. Pursuant to South Carolina law, unless modified by contract, a buyer must give a seller seasonable notice of the breach. *See* S.C. CODE § 36–2–607(3)(a). Failure to do so precludes maintaining an action for breach of an article 2 warranty. *See Hitachi Elec. Devices,* 366 S.C. 163, 621 S.E.2d 38. Plaintiffs urge the court to reject Defendants' arguments concerning notice, asserting they and putative class members are not "buyers" pursuant to the Uniform Commercial Code. (Reply at 6.) As Plaintiff asserts, the official comment to S.C.CODE § 36–2–607 states,

> Under this Article various beneficiaries are given rights for injuries sustained by them because of the seller's breach of warranty. Such a beneficiary does not fall within the reason of the present section in regard to discovery of defects and the giving of notice within a reasonable time after acceptance, since he has nothing to do with acceptance. However, the reason of this section does extend to requiring the beneficiary to notify the seller that an injury has occurred. What is said above, with regard to the extended time for reasonable notification from the lay consumer after the injury is also applicable here; but even a beneficiary can be properly held to use good faith in notifying, once he has had time to become aware of the legal situation.

S.C.CODE § 36–2–607 official comment. In *Seaside Resorts, Inc. v. Club Car, Inc.,* 308 S.C. 47, 416 S.E.2d 655 (Ct.App.1992), the Court of Appeals of South Carolina found a substantially similar North Carolina statute "requires a retail buyer to notify only the retail seller who tendered the goods to him, not wholesalers, distributors, manufacturers, or others who sold the goods further up the chain of commerce." *Seaside Resorts,* 308 S.C. at 59, 416 S.E.2d at 663. The court stated, "In this case, [the statute] required Seaside, the retail buyer, to notify Club Car,

the retail seller who tendered the golf cart battery chargers to it ... As long as Seaside notified Club Car, the statute did not require Seaside to give further notice to Lester, the manufacturer which sold the goods to Club Car, but which was not Seaside's immediate seller." *Id.* at 60, 416 S.E.2d at 664.

Although Defendants assert the court will be required to individually inquire as to whether Plaintiffs gave seasonable notice of the breach to Defendants, as illustrated by *Seaside Resorts,* Plaintiffs and the class members were not required to notify Defendants of the breach. Defendants did not sell TrimBoard directly to the Plaintiff or putative class members. Rather, Defendants sold TrimBoard to contracting companies and supply warehouses, and those entities then sold the TrimBoard to Plaintiffs or incorporated TrimBoard into homes they built for Plaintiffs. Because there is no requirement that Plaintiffs and putative class members give notice to Defendants, no individualized inquiry in that regard is necessary.[4]

Plaintiffs assert Defendants breached express and implied warranties because Trim-Board is not fit for use as an exterior trim product. If the named Plaintiffs successfully prove TrimBoard is not fit for this usage, this proof would also advance the claims of the absent class members. As emphasized by Plaintiffs at the hearing, there will be no issue regarding differing composition of TrimBoard, as the composition of TrimBoard remained unchanged during all relevant times. *(See* Mot. for Class Certification Ex.

A.) The court thus finds the requirement of typicality satisfied.

### D. Commonality of Factual and Legal Issues/Requirements of 23(b)(3)

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). "The common questions must be dispositive and over-shadow other issues." *Lienhart v. Dryvit Sys., Inc.,* 255 F.3d 138, 146 (4th Cir.2001) (citing *Stott v. Haworth,* 916 F.2d 134, 145 (4th Cir.1990)). Commonality "requires little more than the presence of common questions of law and fact." *Thorn v. Jefferson–Pilot Life Ins. Co.,* 445 F.3d 311, 319 (4th Cir.2006) (citing *Lienhart,* 255 F.3d at 146). As this court noted in *Parks Automotive Group, Inc. v. General Motors Corp.,* 237 F.R.D. 567 (D.S.C.2006),

A common question is one that can be resolved for each class member in a single hearing, such as the question of whether an employer engaged in a pattern and practice of unlawful discrimination against a class of its employees. *See* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1763 (3d ed.2005). A question is not common, by contrast, if its resolution "turns on a consideration of the individual circumstances of each class member." *See id.* The commonality test is qualitative, not quantitative. 1 Herbert B. Newberg and Alba Conte, *Newberg on Class Actions,* § 3.10 at 3–50 (3d ed.1992). There need be only a single question of law or fact common to all members of the class.

---

4. As previously noted, "an implied warranty of fitness for a particular purpose arises if the vendor knows when the contract is formed that the purchaser is relying on the vendor's skill or judgment in furnishing the goods." *Myrtle Beach Pipeline Corp.,* 843 F.Supp. at 1036. An inquiry into what the vendor knew at the time of a contract's formation would be an individualized inquiry. However, "the Uniform Commercial Code tends to overlap the warranty of merchantability with that of fitness for a particular purpose." *Little v. Brown & Williamson Tobacco Corp.,* 243 F.Supp.2d 480, 501 (D.S.C.2001). As the Supreme Court of South Carolina has stated, "[W]here the particular purpose for which a product is purchased is also the ordinary or intended purpose of the product, the warranties of merchantability and of fitness for a particular purpose merge and are cumulative, such that a

plaintiff may proceed upon either theory." *Soaper v. Hope Indus., Inc.,* 309 S.C. 438, 440, 424 S.E.2d 493, 495 (1992). Plaintiffs' Amended Complaint alleges "Defendants designed, manufactured, tested, marketed, sold and distributed" TrimBoard "for use as fascia, soffit, corner board, window trim, door trim and general exterior use on homes, apartments, condominiums, buildings and other structures." (Am. Compl.¶ 12.) As Plaintiffs allege TrimBoard's intended purpose is to serve as exterior trim, and Plaintiffs allege this is the purpose for which they employed TrimBoard, the warranties of merchantability and of fitness for a particular purpose "merge and are cumulative," such that the court finds no individualized inquiry necessary with respect to either the implied warranty of merchantability or the implied warranty of fitness for a particular purpose.

*Id.* However, the existence of any common question is insufficient because "at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality." *Sprague v. General Motors Corp.,* 133 F.3d 388, 397 (6th Cir. 1998) (en banc). "What [the court looks] for is a common issue the resolution of which will advance the litigation." *Id.*

*Parks,* 237 F.R.D. at 570.

Plaintiffs assert they have satisfied this requirement:

> This action on the Defendants' development, manufacture, marketing, and distribution of TrimBoard is based on a course of conduct by the Defendants. The action is based upon the legal theories of (1) breach of express warranty; and (2) breach of implied warranties of merchantability, habitability and fitness for a particular purpose. These theories necessarily involve common questions of both law and fact, to wit:
>
> a.  Whether TrimBoard is unsuitable for use as an exterior product;
>
> b.  Whether TrimBoard is defective from the point of manufacture;
>
> c.  Whether Defendants breached the warranties provided to Charleston County, South Carolina residents;
>
> d.  Whether the Plaintiffs are entitled to pre-judgment interest, attorney's fees and costs.

(Mem. in Supp. at 9–10.)

Defendants, on the other hand, argue Plaintiffs have not satisfied the commonality requirement. Instead of addressing the issue of commonality alone, Defendants address the commonality within the predominance context. Defendants do so because in *Lienhart,* the Fourth Circuit noted, "In a class action brought under Rule 23(b)(3), the 'commonality' requirement of Rule 23(a)(2) is 'subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over' other questions." *Lienhart,* 255 F.3d at 147 n. 4 (quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 609, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)).

> Framed for situations in which class-action treatment is not as clearly called for as it is in Rule 23(b)(1) and (b)(2) situations, Rule 23(b)(3) permits certification where class suit may nevertheless be convenient and desirable. To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: Common questions must predominate over any questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy. *Amchem Prods.,* 521 U.S. at 615, 117 S.Ct. 2231. To satisfy the predominance requirement, plaintiffs must show that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and to satisfy the superiority requirement, they must show that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The predominance requirement is "far more demanding" than Rule 23(a)'s commonality requirement and "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623, 117 S.Ct. 2231.

*Gunnells,* 348 F.3d at 459 (Niemeyer, J., concurring in part and dissenting in part) (internal quotation marks and citations omitted).[5]

---

**5.** *Gunnells* presented the "question of whether the district court abused its discretion in conditionally certifying a class action in a suit brought by purchasers and beneficiaries of a multi-employer health care plan for claims growing out of the plan's collapse." *Gunnells,* 348 F.3d at 421. The Fourth Circuit held the district court did not abuse its discretion in conditionally granting class certification against the plan's claims administrator. *Id.* The district court conditionally certified the class against the claims administrator, allowing the class to pursue a single claim: that the plan administrator "violated its duties, both contractual and at law, as third party administrator of the Plan and such conduct was a cause of the Fidelity Plan's failure, and that failure directly injured Plaintiffs and the absent class members." *Id.* at 424–25. The district court found all the requirements of Rule 23(a) satisfied and then turned to Rule 23(b)(3). The district court found the class members evidenced no great interest in individual litigation; in view

■ Defendants argue class certification is improper because "once TrimBoard has been installed, it becomes a component part of the building, uniquely affected by the materials and workmanship that surround it . . . [T]he performance of TrimBoard is dependent on a variety of factors, none of which have anything to do with the product itself." (Resp. in Opp'n at 7–8.) Defendants also argue that affirmative defenses must be considered, and "[h]ere, the individual circumstances of each case, and therefore each potential class member, differ and give rise to various affirmative defenses that are particular to each." (Resp. in Opp'n at 8.) Defendants cite to *Hitachi Electronic Devices*, 366 S.C. 163, 621 S.E.2d 38 (2005), for support, and Defendants assert they are entitled to inquire whether individual claims were filed within the applicable statutes of limitation or the statute of repose. (Resp. in Opp'n at 9.) Furthermore, Defendants assert class certification is not proper because contribution and third-party claims must be considered. Defendants state,

In each case that proceeds to litigation, the Court will be faced with questions whether the product was installed in accordance with the manufacturer's application instructions, whether the distributor properly supplied the instructions provided by the Defendants and whether other construction defects caused water intrusion that damaged the trim . . . [D]amage to TrimBoard can be directly caused by its method of installation, such as whether it has been installed in contact with the ground or masonry products.

(Resp. in Opp'n at 10.) Defendants also assert the class would be unmanageable, given that the alleged damages do not lend themselves to simple mathematical calculation. (Resp. in Opp'n at 11.) Lastly, Defendants assert the court will have to consider maintenance and individual use in determining whether each class member has a cognizable claim. (Resp. in Opp'n at 12–13.)

In Reply, Plaintiffs argue Defendants' attempt to defeat class certification by asserting predominance of individual issues such as maintenance and installation fail because

of the few preexisting cases, class action would be productive; and the flexibility and control of this action in one forum provided benefits outweighing the method of individual litigation. *Id.* at 425. The district court acknowledged concern with the factor regarding the case's manageability, but the court only granted conditional certification and explained it would not hesitate to decertify the class should it prove unmanageable. *Id.* at 426.

On appeal, the plan administrator's principal argument was that the "probable necessity of individual proof of some of the claimed damages by individual class members prevents Plaintiffs from meeting Rule 23's requirements." *Id.* at 427. The Fourth Circuit rejected that argument, noting that in actions for money damages, "courts *usually* require individual proof of the amount of damages each member incurred." *Id.* at 428 (citation omitted). The court noted that common questions predominated over individual questions as to liability, including (1) whether the administrator's mismanagement of claims contributed to the ultimate collapse of the Plan and so caused Plaintiff's damage; (2) whether the administrator breached its contract to administer and timely pay claims under the Plan; (3) whether Plaintiffs are third party beneficiaries of that contract; and (4) whether the administrator otherwise owed a fiduciary duty of care to Plaintiffs. *Id.* On appeal, the administrator argued an individualized inquiry was necessary to determine whether the mismanagement proximately caused

Plaintiffs' injury; the administrator argued the plaintiffs provided no credible evidence that its action or inaction proximately caused damages to them. *Id.* The Fourth Circuit rejected this argument:

First, the sufficiency of the evidence as to proximate cause presented by Plaintiffs goes to the merits of Plaintiffs' case—an issue the Supreme Court has held courts may not consider in ruling on a motion for class certification.

Second, to the extent that [the administrator] argued that *it* was not the proximate cause of the Plan's collapse, the argument actually provides further support for proceeding with this case as a class action . . .

Third, to the extent that [the administrator's] causation argument is that individual inquiry is necessary to establish whether the collapse of the Plan caused Plaintiffs any damages, this is precisely the same argument made by almost all defendants in mass tort cases: determining damages will require an individualized inquiry. Courts have routinely rejected this argument, concluding, as we have in previous cases, that the need for individualized proof of damages alone will *not* defeat class certification . . .

Moreover, the damage calculations in this case do not appear to be particularly complex, unlike the calculations in those cases in which courts have found that numerous complicated individual damage inquiries predominated over common issues . . .

*Id.* at 428–29.

these issues do not factor into Plaintiffs' theory of the case. (Reply at 2.) According to Plaintiffs, TrimBoard fails to meet industry standards and building code standards. (Reply at 2.) Plaintiffs present evidence that because TrimBoard failed to comply with the applicable industry standard, it "is substantially likely to fail during the useful life of the product." (Lee Aff. ¶ 13.) The Affidavit of Derek Hodgin states, "In my opinion, following Defendants['] application and maintenance instructions will not cure the inherent defect of the product." (Hodgin Aff. ¶ 15.)

Plaintiffs asserted at the hearing and in their briefs that their claims do not depend on whether class members followed application and maintenance instructions because assuming all instructions have been followed, TrimBoard still breaches these warranties. Plaintiffs' theory is that TrimBoard is defective and completely unsuitable as an exterior trim product, and because Plaintiffs allege TrimBoard is completely unsuitable as an exterior trim product and will fail during its useful life even if all instructions are followed, evidence regarding improper installation and improper maintenance has no bearing on Plaintiffs' theory. If Plaintiff Thomas proves that TrimBoard is completely unsuitable for use as exterior trim, such proof will advance the claims of the absent class members.[6]

■ The court now considers the factors listed in Rule 23(b)(3): (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. With respect to the first factor, generally speaking, the members of the class do not appear interested in individ-

ually controlling separate actions; the claims do not generally seem large enough to warrant such individualized attention, and many of the class members, like Plaintiff Thomas, may have been (or may be) able to resolve the problems with TrimBoard by contacting the contractor who built the home. Plaintiffs have presented evidence that the value of the TrimBoard alone is rarely sufficient to justify litigation expenses. (Lucey Aff. ¶ 27.) Secondly, the extent of litigation concerning this controversy that has been commenced by or against members of this class is minimal. As Defendants assert, a small number of warranty claims regarding TrimBoard "have escalated into, or gone directly to, litigation." (See Resp. in Opp'n at 6; Lucey Aff.)

The court also finds the third factor favors class certification. Plaintiff is claiming TrimBoard is defective, even if it is installed and maintained properly. Concentrating this litigation will provide the class members who might not otherwise seek a remedy due to the hassle and expense of litigation with a remedy, and having one forum will protect Defendants from inconsistent judgments. Lastly, the court must consider the difficulties in managing a class action. In this case, the potential for difficulty seems to arise in the context of damages calculation. Plaintiffs assert the damage calculation will be simple, perhaps as simple as using an Excel spreadsheet. (See Reply at 11.) Defendants, on the other hand, present evidence that damage calculations will be very difficult, with the need to take many factors into account: height of the trim above the grade; length of trim actually being replaced; orientation of trim; width and thickness of trim; layering of trim; the total amount of trim being replaced; access; and adjacent materials. (Waier Aff. ¶ 6.) Their evidence shows that "[t]he most accurate way to price hardboard trim replacement is by estimating each project separately." (Waier Aff. ¶ 7.) While the court may have to make individualized

---

6. Although Defendants assert they may be entitled to a statute of limitations defense, the court finds such a situation unlikely. Defendants admitted that since the year 2000, they have logged more than 800 warranty claims relating to the TrimBoard product. (Mot for Class Certification Ex. A.) In South Carolina, a plaintiff must bring

an action for breach of contract within six years after the cause of action accrued. See S.C. CODE § 36-2-725(1). Plaintiff filed the instant complaint on May 25, 2005. It thus appears that problems with TrimBoard arose within six years of the filing of the instant complaint.

determinations regarding damages, the court finds this alone does not preclude certification. As noted by the Fourth Circuit in *Gunnells*, "Rule 23 explicitly envisions class actions with ... individualized damage determinations." *Gunnells*, 348 F.3d at 428; *see also Hill v. W. Elec. Co.*, 672 F.2d 381, 387 (4th Cir.1982) ("Bifurcation of ... class action proceedings for hearings on ... damages is now commonplace...."). In the court's opinion, the class is manageable. Finding the factors in Rule 23(b)(3) favor class certification, and finding the requirements of Rule 23(a) satisfied, the court grants Plaintiffs' Motion for Class Certification.

### CONCLUSION

It is therefore **ORDERED,** for the foregoing reasons, that Plaintiffs' Motion for Class Certification is **GRANTED.**

**AND IT IS SO ORDERED.**