James M. CROWHORN, on behalf of himself and all others similarly situated, Plaintiff,

v.

NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant.

C.A. No. 00C–06–010WLW.

Superior Court of Delaware, Kent County.

Submitted: Oct. 3, 2003.
Decided: Nov. 6, 2003.

John S. Spadaro and Roger D. Landon, of Murphy, Spadaro & Landon, Wilmington, for the Plaintiff.

Nicholas E. Skiles, of Swartz, Campbell & Detweiler, Wilmington, Curtis P. Cheyney, III, Pro Hac Vice, James C. Haggerty, Pro Hac Vice, for the Defendant.

## OPINION

WITHAM, J.

### I. Introduction

This Opinion addresses the final certification of the settlement class, final approval of the settlement, and the award of attorneys' fees requested by Murphy Spadaro & Landon. Having considered the Settlement Agreement and the arguments made during the Fairness Hearing, this Court determines that the Settlement Agreement warrants approval. In addition, this Court approves the award of attorneys' fees to Murphy Spadaro & Landon totaling $1,650,000.

### II. Background

#### A. Facts

On June 8, 2000, James Crowhorn ("Plaintiff" or "Crowhorn") filed a class action complaint alleging breach of contract, bad faith, and fraud based on al-

legations that Nationwide improperly processed claims for Personal Injury Protection ("PIP") benefits.[1] The underlying basis of the Plaintiff's complaint is that Nationwide systematically delayed and/or denied the payment of PIP claims and benefits of Delaware automobile insurance policies. More specifically, Plaintiff alleges that such claims were denied or delayed without providing the insured with a reasonable, written explanation within thirty (30) days. Additionally, the Plaintiff contends that the Defendant: "1) delayed payment of claims for lost earnings; 2) utilized requests for independent medical exams solely as a basis for reducing or terminating PIP benefits; 3) limited payments of benefits to usual and customary charges while Delaware allegedly requires payment for the reasonable and necessary medical expenses; 4) refused to pre-certify medical treatment when it should have done so; 5) reduced payment for medical benefits based on pre-existing conditions; and 6) inadequately trained adjusters regarding medical records."[2] Since the Plaintiff filed his suit this case has been heavily litigated as evidenced by the plethora of opinions that have been issued concerning this case.[3] The parties have also engaged in extensive discovery including a detailed review and evaluation of thousands of electronic and paper Delaware PIP files.

### B. Settlement

After months of negotiations, the parties in this case have amicably reached an agreement. The parties have agreed to define the Settlement Class as follows:

All Nationwide Delaware automobile policyholders, insureds and passengers of insured vehicles, including all of their assigns, and medical care fee for service providers, who during the Class Period (a) suffered bodily injuries and made claims or noticed Settling Defendants regarding any resultant medical expenses, lost earnings and/or other benefits pursuant to a valid Delaware Nationwide automobile liability policy's Personal Injury Protection or Additional Personal Injury Protection (hereinafter "PIP" and "APIP") coverages (not waived or rejected) and (b) who suffered or allegedly suffered First Party and/or Extra–Contractual loss or losses when they failed to receive timely, full or partial payment of PIP/APIP benefits and performances from Nationwide and/or from either or any of the Released or settling Defendants for a PIP/APIP claim occurring between June 8, 1997 and the date of the mailing of Notice, being a claim of a Class Member not expressly excluded by the Class definition.

Excluded from the class are those policyholders, insureds and passengers of insured vehicles, who have been dismissed from the litigation by Court Order (unappealed), or whose claims have been valued and paid by an order of the Court from arbitration and full payment received from Nationwide and a Release signed.

---

1. The facts of this case are set forth in great detail in this Court's prior rulings on this case see, e.g., Crowhorn v. Nationwide Mut. Ins. Co., 2002 WL 1767529, 2002 Del.Super. LEXIS 178 (Del.Super.Ct.2002); Crowhorn v. Nationwide Mut. Ins. Co., 2002 WL 388115, 2002 Del.Super. LEXIS 61 (Del.Super.Ct.2002), Crowhorn v. Nationwide Mut. Ins. Co., 2001 WL 695542, 2001 Del.Super. LEXIS 358 (Del.Super.Ct.2001) for a more in-depth analysis of the facts.

2. Joint Petition at 3.

3. This Court has issued seven opinions and the Supreme Court has issued three.

For settlement purposes only, both parties agreed that the Settlement Class should be certified.

The proposed settlement agreement provided for each member of the class to receive a one time lump sum payment in the amount of One Hundred Dollars ($100.00).[4] The lump sum payment shall be paid out of a Five Million Dollar ($5,000,000.00) settlement fund, and sent to each member of the class along with the notice of the settlement. If a class member wants to accept the terms of the settlement that member merely has to cash the One Hundred Dollar check. If a class member has a claim that is more than the settlement amount, that class member has two options under the proposed settlement: (1) opt out of the settlement or (2) adjudicate the claim before a neutral arbitrator.

In June 2003, this Court ordered the class to be certified for settlement purposes and preliminarily approved the Proposed Settlement. Notice of the settlement was provided to members of the proposed class, through the newspaper and the mail. Approximately 28,000 class notices were mailed in August 2003. A Fairness Hearing was conducted by this Court on October 3, 2003, in which opponents to the settlement had an opportunity to voice their concerns. No opposition was made to the settlement agreement. In addition, the Court heard oral argument from Plaintiff's Counsel regarding an award of attorneys' fees totaling One Million Six Hundred Fifty Thousand Dollars ($1,650,000.00).

### III. Analysis

Class actions maintained in this Court are governed by Superior Court Civil Rule 23, which sets forth the requirements for maintaining a class action. In June 2003, this Court preliminarily approved the settlement class and the settlement agreement. This Order will address the final certification of the settlement class, the fairness and adequacy of the settlement agreement and the award of attorneys' fees to Murphy Spadaro & Landon.

### A. Class Certification of the Settlement Class

Certification of a class action requires a two-step analysis.[5] The first step requires that the action satisfy all four prerequisites mandated by Rule 23(a).[6] The prerequisites are: (1) numerosity; (2) commonality; (3) typicality and (4) adequacy of representation. If all of the prerequisites of subsection (a) are satisfied, then the Court moves to the second step, which is

---

4. This amount was determined after statistical research conducted by the parties. The amount is significant given the fact that most claims-as represented by the attorneys in the June 3rd meeting-are approximately Forty-Two Dollars ($42).

5. *Crowhorn v. Nationwide Mut. Ins. Co.*, 2002 WL 388115, *1, 2002 Del.Super. LEXIS 61, *4 (Del.Super.Ct.2002) (citing *Mentis v. Delaware Am. Life Ins. Co.*, 2000 WL 973299, *1, 2000 Del.Super. LEXIS 237, *1 (Del.Super.Ct.2000)); *see also Prezant*, 636 A.2d at 920; *Smith v. Hercules, Inc.*, 2003 WL 1580603, *4, 2003 Del.Super. LEXIS 38, *13 (Del.Super.Ct.2003).

6. *Crowhorn*, 2002 WL 388115 at *1, 2002 Del.Super. LEXIS 61 at *4, *see also Prezant*, 636 A.2d at 920. Subsection (a) of Rule 23 states:

> (a) Requisites to Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

to determine if the requirements of Rule 23(b) are satisfied.[7] Rule 23(b) requires the presence of at least one of four additional factors.[8]

In the Order preliminarily approving stipulation of settlement, this Court concluded that the settlement class satisfied the four requirements of Rule 23(a).[9] In addition, the action was found to satisfy Rule 23(b)(3) which provides for certification of a class when common questions of law or fact predominate over individual questions.

No party or opponent to the settlement alleged at the Fairness Hearing that the requirements of Rule 23 have not been met. Thus this Court is convinced that the requirements of Rule 23 continue to be met and will certify the Settlement Class.

### B. Approval of Class Settlement

■ Approval of a class action settlement involves a two-step process. First, the court makes a preliminary evaluation of the fairness of the settlement after reviewing the proposed terms. If the Court concludes that there are no grounds to doubt the fairness of the settlement, the Court must order that class members be given notice of a formal Fairness Hearing, at which time class members will have an opportunity to make presentations in support of or in opposition to the proposed settlement. Following the Fairness Hearing, the Court makes specific findings regarding the fairness, adequacy and reasonableness of the settlement. Only if the Court finds that the settlement meets these requirements will the Court render final approval of the settlement.

In June 2003, this Court concluded that there were no grounds to doubt the fairness of the proposed settlement and ordered notice be given to members of the class. Approximately 28,000 notices were mailed and a notice was published in the

---

**7.** *Crowhorn,* 2002 WL 388115 at *1, 2002 Del. Super 61 at *4 (citing *Mentis,* 2000 WL 973299 at *1, 2000 Del.Super. LEXIS 237 at *2); *Prezant,* 636 A.2d at 920.

**8.** Subsection (b) of Rule 23 states:

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of paragraph (a) are satisfied, and in addition:
(1) The prosecution of separate actions by or against individual members of the class would create a risk of:
(A) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(B) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) The party opposing the class has acted or refused to act on grounds generally ap-

plicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) The Court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matter pertinent to the findings include:
(A) The interest of members of the class in individually controlling the prosecution or defense of separate actions;
(B) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(C) The desirability or undesirability of concentrating the litigation of the claims in the particular forum;
(D) The difficulties likely to be encountered in the management of a class action.
SUP.CT. CIV. R. 23(b).

**9.** *See Crowhorn v. Nationwide Mutual Insurance Co.,* C.A. No. 00C–06–010 (June 23, 2003).

newspaper. The Fairness Hearing was conducted on October 3, 2003, at which time no opposition to the settlement was made. It is now the function of this Court to determine whether the proponents of the settlement have satisfied their burden to demonstrate to the Court that the settlement is fair, adequate and reasonable.[10]

■ In order to determine whether a settlement is fair, adequate and reasonable, the court will consider several factors, including whether (1) the named plaintiffs are the only class members to receive monetary relief, or are to receive relief that is disproportionately large; (2) the settlement amount is much less than that sought in the complaint or indicated by preliminary settlement; (3) major claims or types of relief sought in the complaint have been omitted from the settlement; (4) particular segments of the class are treated significantly differently; (5) many class members object to the settlement; and (6) apparently cogent objections have been raised.[11] In addition, "there is a presumption in favor of the settlement when there has been arms length bargaining among the parties, sufficient discovery has taken place to enable class counsel to evaluate accurately the strengths and weaknesses of the plaintiff's case, only a few members of the class object and their relative interest is small." [12]

■ The named Plaintiff will receive an award of approximately $24,000. This is significantly larger than the amount the rest of the class members will receive. The average claim of the remaining class members is $42, but they will actually receive $100. However, the remaining class members have the option to opt out of the settlement or adjudicate their claims before a neutral arbitrator. During the arbitration process, Murphy Spadaro & Landon will continue to represent the class members at no additional charge to those members. Thus, class members are not limited to the $100 check they have received in the mail, they could recover the full amount they claim to be owed. At the time of the Fairness Hearing, approximately one hundred class members had chosen to arbitrate their claim, but the vast majority had cashed the check and thus agreed to the settlement. Because the majority of the members of the class will actually receive more than they are owed and those who will not have the ability to recover what they believe they are owed, the fact that Mr. Crowhorn will receive $24,000 does not defeat the fairness of the settlement.

The major issue in this case was Nationwide's improper processing of claims for PIP benefits, and, specifically, their denial or delay of payments without a reasonable, written explanation. Clearly the settlement, which pays Nationwide insureds who fall within the settlement class $100 when the average claim is only $42, addresses and resolves this major issue. The members of the class also have the option to arbitrate their claim if they believe they are entitled to a larger amount. In addition, no objections have been raised regarding the settlement.

Finally, the settlement was reached through arms length bargaining between the parties after a substantial amount of discovery took place. Thus, the presumption is that the settlement is fair, adequate

---

10. Manual for Complex Litigation § 30.41 at p. 238 (3d ed.1995).

11. Manual for Complex Litigation § 30.42 at p. 239 (3d ed.1995).

12. *Wellman v. Dickinson*, 497 F.Supp. 824, 830 (S.D.N.Y.1980)

and reasonable. The settling parties have intensely litigated this case for three years and pretrial motions have been presented and defended. It is clear that all of the parties were aware of the strengths and weaknesses of the case and negotiated to reach a settlement that would be fair to those involved.

Based on the above discussion, this Court is satisfied that the settlement reached between the parties is fair, adequate and reasonable.

### C. Approval of Award of Attorneys' Fees

■ Finally, the Court must address Class counsel's request for attorneys' fees. In their brief filed with the Court, Murphy Spadaro & Landon requested an award totaling One Million Six Hundred Fifty Thousand Dollars ($1,650,000.00), or approximately 33% of the settlement amount of $5,000,000.00. Class counsel argue that the fee is reasonable based on the prevailing rate among attorneys for similar litigation and their success in achieving this size settlement for the class.

The Supreme Court has stated, "Class action suits which result in the recovery of money exemplify the class creation of a common fund." [13] Thus, the settlement fund in this case would be considered a common fund. The equitable common fund doctrine is derived from the idea that those who benefitted from litigation should share its cost. [14] When an award is made to plaintiffs in a class action, the attorneys' fees are paid out of that fund. This keeps the plaintiffs from being unjustly enriched by gaining the benefit of the litigation but not contributing to its cost.

The common fund doctrine permits a successful plaintiff's attorney to request an award of attorneys' fees from the settlement fund. Because there are often no parties to argue against the award of attorneys' fees on behalf of the class, the Supreme Court has held

> [A] request for an award of attorneys' fees from a common fund must be subjected to the same heightened judicial scrutiny that applies to the approval of the class action settlements ... the Court of Chancery must make an independent determination of reasonableness on behalf of the common fund's beneficiaries, before making or approving an attorneys' fee award. [15]

Generally, courts utilize two different methods of calculating a reasonable fee award. Originally, fees were awarded based on a reasonable percentage of the common fund. [16] More recently, courts began to use the "lodestar" approach to calculate fee awards. When using the "lodestar" approach, the court multiplies the attorney's reasonable hours spent working on the case by a reasonable hourly fee, the product of which is the "lodestar." The court may then use a multiplier to increase the award if additional factors, such as the contingent nature of the case, warrant a higher fee. While the majority of federal courts use the reasonable percentage method in calculating fee awards, the Delaware Supreme Court has refused to adopt a mandatory methodology for calculating fee awards in common fund cases stating that to do so "would be the antithesis of the equitable principles from which the concept of such awards originated." [17]

---

13. *Goodrich v. E.F. Hutton Group, Inc.*, 681 A.2d 1039, 1044 (Del.1996).

14. *Id.* at 1044.

15. *Id.* at 1045–1046.

16. *Id.* at 1046.

17. *Id.* at 1050.

The Delaware Supreme Court has approved the Court of Chancery's multiple factor approach to determining attorneys' fee awards. These factors include the results achieved, the amount of time and effort applied to the case, the complexities of the litigation, the skill and ability of counsel, and the contingent nature of the case.[18]

Murphy Spadaro & Landon contend that the members of the class achieved a great benefit from the settlement achieved. Clearly, there are no certainties in litigation and there was no guarantee that the class members would recover anything after conducting a trial. In addition, considerable and protracted discovery took place at the pre-certification stage which made the prospect of success quite problematic. The settlement allows the class members to receive a $100 payment even though the average claim is only $42. In addition, the class members have the option to arbitrate their claims if they believe $100 is not sufficient for their particular claim. Class counsel will continue to represent the class members in the arbitration proceedings for no additional fee. In addition, class counsel contend that the complex nature of the case warrants the fee requested. The case involved thousands of claims filed over many years by Nationwide insureds. This case raised issues not yet decided by Delaware law, and numerous opinions were issued by this Court and the Supreme Court. It is clear to the Court that the class members did receive a great benefit from the $5 million settlement reached in this case.

Mr. Spadaro and Mr. Landon further assert that their efforts in negotiating the settlement merit the award requested. In making this contention they state that their law firm devoted 2,651 attorney and paralegal hours to the case, and enclosed a copy of the billing statement with their brief. In addition, expenses and advances totaled over $24,400. Based on this information, the fee requested equates to approximately $613 per hour. Counsel point to specific successes they achieved in the course of the litigation, including defeating Nationwide's attempt to dismiss the complaint. Further, they assert that the average contingency fee in Delaware for representing an automobile insured is 33⅓% a figure supported by affidavits of other local attorneys, and the fee they are requesting is less than this.

In the order preliminarily approving this settlement, this Court found that class counsel has prosecuted this case with diligence. In addition, finding that Mr. Spadaro had experience litigating similarly complex cases, this Court concluded that Mr. Spadaro was sufficiently qualified and experienced to manage the proposed Settlement Class. Mr. Spadaro has performed this task with much success, mailing approximately 28,000 class notices and fielding thousands of phone calls from class members. In addition, Murphy Spadaro & Landon's work is not finished; they will continue to represent those class members who choose to go to arbitration rather than taking the $100 payment. As of the time of the Fairness Hearing, 100 people had chosen this option and it was expected that another 100 people would choose it.

Finally, the contingent risk warrants a fee award. Not only did counsel risk losing this case and not recovering any amount of money, but they risked a seven-figure judgment against them, based on Nationwide's claim of confidentiality violations. However, the arbitrator rejected Nationwide's claim and no damages were assessed against counsel.

18. *Sugarland Industries, Inc. v. Thomas,* 420     A.2d 142 (Del.1980).

In summary, based on the above discussion, this Court concludes that Murphy Spadaro & Landon's work on this case clearly warrants an award of attorneys' fees. The amount requested, $1,650,000 or 33% of the settlement fund, is a fair and reasonable amount based on the risk involved, the skill of the attorneys, the extensive work performed in this litigation and the benefit gained by the class members, given the difficulty involved.

### IV. Conclusion

In conclusion, this Court certifies the settlement class and determines that the settlement is fair, reasonable and adequate and thus warrants approval. In addition, this Court grants Murphy Spadaro & Landon's request for attorneys' fees totaling $1,650,000. These fees shall be paid within 14 days.

The best notice practicable under the circumstances having been provided to Class Members and full opportunity having been offered to Class Members to participate in the Fairness Hearing, the notice satisfies the requirements of Delaware Superior Court Civil Rule 23 and the requirements of due process.

A list of the Class Members who properly and timely excluded themselves from the Settlement Class has been filed with the Court. It is hereby determined that all Class Members who have not timely elected to be excluded from the class, and their respective heirs, executors, administrators, successors, and assigns, including all fees for service health care providers to the insureds, and all others claiming by, through or under them are bound by the Final Order and are hereby deemed and adjudged to have fully and finally discharged and forever and finally released each and all of the Released Claims as against Nationwide and each Settling Defendant; and each Class Member and their assigns are permanently barred and prohibited from instituting, claiming, prosecuting in a judicial or other forum, either directly or indirectly, including, but not limited to any local, state or federal court, agency or other authority or arbitration forum, any other action or proceeding asserting any Released Claim against Nationwide and/or the Released Defendants.

The Stipulation and the terms embodied therein are not and shall not be deemed to be an admission by the Settling Defendants of any of the facts or allegations contained in the Plaintiff's Complaint or Motions filed against them for any violation of Delaware law or of any damages caused to any Plaintiff or Settlement Class Member in connection with the Action. Neither the Stipulation of Settlement nor the settlement embodied therein or any related document shall be offered or received in evidence in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to consummate or enforce the Stipulation of Settlement embodied therein for any purpose.

Without affecting the finality of this Order and Judgment, this Court shall retain jurisdiction over this case, Class Members, administration and enforcement of the settlement, including, but not limited to the benefits to Class Members as may otherwise be necessary to preserve this Court's jurisdiction over this matter.

Any disputes or controversies arising with respect to the interpretation of this order, settlement and judgment shall be presented by Motion to this Court.

IT IS SO ORDERED.

