Helane **BULMASH**, on behalf of herself and all others similarly situated, Plaintiff,

v.

The **TRAVELERS INDEMNITY COMPANY**, Defendant.

**Civil No. JFM 07–2075.**

United States District Court, D. Maryland.

April 8, 2009.

Lawrence A. Melfa, Butler Melfa and Taylor P.A., Towson, MD, John Sheehan Spadaro, John Sheehan Spadaro LLC, Hockessin, DE, for Plaintiff.

Steven Michael Klepper, Kramon and Graham P.A., Baltimore, MD, for Defendant.

## OPINION

J. FREDERICK MOTZ, District Judge.

Plaintiff Helane Bulmash ("Bulmash") has brought suit against Travelers Indemnity Company ("Travelers") alleging that Travelers failed to tender payment of statutory interest on Personal Injury Protection claims that were paid late by Travelers. Now pending is Bulmash's motion for class certification, opposed by Travelers. The issues have been fully briefed and no oral hearing is necessary. The motion for class certification will be granted.

### I.

Bulmash seeks to certify the following class:

> All of Travelers' Maryland insureds who, during the period August 6, 2004 to the present, submitted covered claims for medical expenses, lost earnings or other benefits under PIP coverages issued as part of Travelers' insurance contracts; but whose claims, though not disputed by Travelers at the time, were not paid by Travelers at any time prior to the expiration of the thirty-day period under Md.Code Ann., Insurance § 19–508(c).

Section 19–505 of the Maryland Insurance Code ("Section 19–505") requires any insurer in Maryland that issues, sells, or delivers a motor vehicle liability insurance policy to provide, unless waived, no-fault coverage for medical, hospital, and disability benefits, known as "Personal Injury Protection" or "PIP." Md.Code Ann., Ins. § 19–505; cf. Dutta v. State Farm Ins. Co., 363 Md. 540, 769 A.2d 948, 952–53 (2001) (providing background of Maryland PIP legislation). The minimum benefits provided under Section 19–505 must include up to $2,500 for various expenses incurred within three years of the accident. Md.Code Ann., Ins. § 19–505(b)(2). A related provision, Section 19–508 of the Maryland Insurance Code ("Section 19–508"), requires an insurance company to pay PIP benefits "periodically as claims for the benefits arise and within 30 days after the insurer receives satisfactory proof of claim." Id. § 19–508(a)(1). As a penalty, "[p]ayments of benefits that are not made in

accordance with this section and that are overdue shall bear simple interest at the rate of 1.5% per month." *Id.* § 19–508(c).

The proposed class representative, Bulmash, alleges that Travelers failed to comply with Section 19–508 when it tendered payment of her PIP benefits beyond the thirty-day deadline without also paying the statutory interest. On December 5, 2005, Bulmash was injured in a car accident while driving her 2000 Nissan Altima, a vehicle covered under a Travelers insurance policy. (Compl. ¶¶ 5–6, 15). Following the accident, Bulmash submitted PIP claims to Travelers for expenses she incurred. (*Id.* ¶ 7). Bulmash alleges that Travelers "failed to pay or deny [her] claims for PIP benefits within 30 days of its receipt of satisfactory proof of claim," and "has failed to pay [ ] interest owed to her" as required by Section 19–508. (*Id.* ¶¶ 19–20.)

## II.

Class actions serve important public purposes, including judicial economy, efficiency, and providing " 'aggrieved persons a remedy if it is not economically feasible to obtain relief through the traditional framework of multiple individual damage actions.' " *Gunnells v. Healthplan Servs., Inc.,* 348 F.3d 417, 424 (4th Cir.2003) (quoting 5 James Wm. Moore et al., Moore's Federal Practice § 23.02 (3d ed.1999)). District courts have wide discretion, within the bounds of Rule 23, in determining whether to certify a class. *See Cent. Wesleyan Coll. v. W.R. Grace & Co.,* 6 F.3d 177, 185 (4th Cir.1993). A "rigorous analysis" must be conducted by the court, with careful attention paid to the requirements of Rule 23. *Thorn v. Jefferson–Pilot Life Ins. Co.,* 445 F.3d 311, 318, 335 (4th Cir.2006).

■ The plaintiff bears the burden of demonstrating that the proposed class meets the certification requirements of Fed.

R.Civ.P. 23. First, the plaintiff must meet the four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation. *Thorn,* 445 F.3d at 318. If those prerequisites are satisfied, the plaintiff must then demonstrate that the proposed class fits into one of the categories set forth in Rule 23(b). *Id.* Bulmash seeks certification under Rule 23(b)(2) and (3).

### A. Rule 23(a)

#### 1. Numerosity

■ Rule 23(a)(1) requires the proposed class to be "so numerous that joinder of all members is impracticable." For purposes of class certification discovery, the parties negotiated a sampling of PIP files to be produced by Travelers and reviewed by Bulmash. Of the 179 files produced in the sample, plaintiff identified fifty-one—or approximately twenty-eight percent—that were subjected to at least one late PIP payment on which interest was not paid.[1] (Pl. Helane Bulmash's Opening Br. in Supp. of Class Certification ["Pl.'s Mem."] 10.) Were the rate of twenty-eight percent to hold for all claimants in the class period,[2] the class would include approximately 500 claimants. (*Id.*) Defendant argues that seventeen of these files do not fit within the class definition. (Def. The Travelers Indemnity Co.'s Mem. of Law in Opp'n to Pl. Helane Bulmash's Mot. for Rule 23 Class Certification ["Def.'s Mem."] 20–21.) Importantly, however, defendant admits the sample contains thirty-three class members. These undisputed class members *alone* may be large enough to support class certification. *See In re Kirschner Med. Corp. Sec. Litig.,* 139 F.R.D. 74, 78 (D.Md.1991) (noting that "a class of as few as 25 to 30 members raises the presumption that joinder would be impracticable"). As the sample contains only approximately ten percent of the total claims filed in the class period, the actual class size will be much larger, perhaps ten times the

---

**1.** Plaintiff notes that certain records do not contain the date Travelers received the claim. Without this information, plaintiff could not determine the number of days from receipt of the claim to payment, and therefore could not determine if a violation occurred.

**2.** Travelers posits that the sample, because it includes only the highest-dollar files as agreed upon by the parties, overrepresents the number of violations. (Def.'s Mem. 17.) For purposes of this motion, however, Travelers accepts that the sample is representative of the general population of claims. (*Id.*)

estimated sample size. Therefore, I find that the numerosity requirement is easily met.

### 2. Commonality

"Commonality requires that 'there are questions of law or fact common to the class.'" *Lienhart v. Dryvit Sys., Inc.,* 255 F.3d 138, 146 (4th Cir.2001) (*quoting* Fed. R.Civ.P. 23(a)(2)). "A common question is one that can be resolved for each class member in a single hearing," and does not "turn[ ] on a consideration of the individual circumstances of each class member." *Thorn,* 445 F.3d at 319 (internal quotation marks and citation omitted). Commonality tends to merge with typicality and adequacy of representation, with commonality and typicality "serv[ing] as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of the S.W. v. Falcon,* 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

■ Common issues of law in this case include whether class members are entitled to statutory interest under Section 19–508 due to Travelers' late payment of PIP claims, the effect of Travelers' failure to document the date a claim was received, whether the thirty-day payment obligation begins to run before an executed Application for Benefits ("AFB") is received by Travelers, and the application of Sections 19–505 and 19–508 to MedPay [3] benefits. Factual differences among the class members identified by defendant, such as the number of days the payment was late for each claimant, do not preclude certification because "the class members share the same legal theory." *Peoples v. Wendover Funding, Inc.,* 179 F.R.D. 492, 498 (D.Md.1998).

### 3. Typicality

■ The claims of the class representative must be typical of the class, and the proposed representative "possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co.,* 457 U.S. at 156, 102 S.Ct. 2364. " 'The test for determining typicality is whether the claim or defense arises from the same course of conduct leading to the class claims, and whether the same legal theory underlies the claims or defenses.' " *Robinson v. Fountainhead Title Group Corp.,* 252 F.R.D. 275, 287–88 (D.Md. 2008) (*quoting Peoples,* 179 F.R.D. at 498). The plaintiff's claim is compared with those of the absent class members by reviewing whether the facts the plaintiff would rely upon to prove his or her case would also prove the claims of absent class members. *Deiter v. Microsoft Corp.,* 436 F.3d 461, 467 (4th Cir.2006). While the plaintiff's claim and the claims of class members need not be perfectly aligned or identical, the plaintiff's claim "cannot be so different than the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *Id.* at 466–67. In other words, the class representative's "interest in prosecuting his own case must simultaneously tend to advance the interests of the absent class members." *Id.* at 466.

■ Bulmash is a Travelers automobile insurance policyholder who during the class period submitted claims under the policy's PIP coverage, yet failed to receive statutory interest due to her when Travelers paid her claim beyond the thirty-day deadline. This same course of conduct by Travelers—Travelers' failure to pay statutory interest when it paid a claim more than thirty days after receipt—leads to the claims of all class members. The same legal theory concerning the requirements of Sections 19–505 and 19–508 exists for all class members. That each in-

---

**3.** On the main insurance coverage form, Travelers offers Coverage C, "Medical Payments" ("MedPay"), which Travelers characterizes as "separate coverage that provides 'excess insurance over' PIP benefits." (Def.'s Mem. 5.) Travelers exhausts PIP benefits ($2,500) before it begins paying MedPay benefits. According to Travelers, MedPay differs from PIP in several ways: MedPay is subject to a number of exclusions beyond those enumerated in Section 19–505, does not cover pedestrians unrelated to the policyholder, and does not provide coverage for lost income. (*Id.* 5–6.) One of the issues common to the class is whether MedPay benefits are subject to the thirty-day payment deadline and statutory interest requirement.

sured's claim will depend on unique facts—for example, the date his or her claim was received by Travelers and the number of days the payment was late—does not lead to the conclusion that the typicality requirement is not met. *See Newsome v. Up–To–Date Laundry, Inc.*, 219 F.R.D. 356, 362 (D.Md.2004) ("Factual differences between class members' experiences do not preclude certification if the class members share the same legal theory."). All proposed class members will allege that they submitted a valid PIP claim to Travelers, Travelers paid their PIP claim beyond the thirty-day deadline, and they are entitled to recovery of the statutory interest due under Section 19–508. This is exactly the claim brought by Bulmash.

### 4. Adequacy of Representation

■ The class representative must "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). The determination of adequacy of representation focuses on "competency of class counsel, class counsel's willingness to prosecute the action and on whether any conflict of interest exists between the named parties and the class they represent." *Robinson*, 252 F.R.D. at 288.

■ Bulmash's counsel has successfully prosecuted similar class actions of a larger size. (*See* Pl.'s Exs. 52, 55; Sparado Aff. ¶ 12.) In one of these actions, the Superior Court of Delaware found that Bulmash's counsel "had experience litigating similarly complex cases" and "was sufficiently qualified and experienced to manage the proposed Settlement Class." *Crowhorn v. Nationwide Mut. Ins. Co.*, 836 A.2d 558, 565 (Del.Super.Ct.2003). The court further found that in the case before it, Bulmash's counsel had "prosecuted th[e] case with diligence" and managed the class "with much success." *Id.* Counsel's efforts to date in the instant action, including a review of the 179 files from Travelers, demonstrate a willingness to prosecute this action.

Defendant attempts to manufacture a conflict of interest between Bulmash and other class members because of erroneous overpayments made by Travelers under PIP to other class members. Bulmash received *less* than she was owed under PIP because Travelers erroneously paid her under MedPay before exhausting her PIP benefits. (Def.'s Ex. I.) According to Travelers, to maximize her recovery, Bulmash may assert that statutory interest is owed on the amount Travelers *should* have paid under PIP, not on the amount Travelers *actually* paid under PIP. (Def.'s Mem. 37.) The conflict arises, the argument goes, because as to at least two other class members, Travelers erroneously paid benefits under PIP instead of MedPay. (*Id.*; Def.'s Exs. J–10, J–11.) In order to maximize their recovery, those claimants would be motivated to assert that statutory interest is due on the amount Travelers *actually* paid under PIP, not what was properly due. I find that this does not create a conflict sufficiently serious to undermine the adequacy of class counsel's representation. If I find that MedPay is subject to Sections 19–505 and 19–508, this potential conflict will never materialize. In any event, even if Travelers need not pay statutory interest for MedPay benefits paid more than thirty days after receipt, the speculative potential for a conflict of interest offered by Travelers does not warrant denial of class certification.

As plaintiff has satisfied the requirements of Rule 23(a), I must determine whether certification is appropriate under Rule 23(b)(2) or Rule 23(b)(3).

### B. Rule 23(b)(2)

A Rule 23(b)(2) class action is appropriate if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed.R.Civ.P. 23(b)(2). The Fourth Circuit has held that "Rule 23(b)(2) does not 'cover cases where the primary claim is for damages, but is only applicable where the relief sought is ... predominantly injunctive or declaratory.'" *Thorn*, 445 F.3d at 329 (*quoting Lukenas v. Bryce's Mountain Resort, Inc.*, 538 F.2d 594, 595 (4th Cir.1976)). While in Rule 23(b)(3) actions, the court will generally need to conduct individual hearings to determine the amount of damages for each plaintiff, the

goal in the remedy phase of a Rule 23(b)(2) class action is "either to make a declaration about or enjoin the *defendant's actions* affecting the class as a whole, and individual hearings will not be necessary." *Id.* at 330. Unlike Rule 23(b)(3), Rule 23(b)(2) does not require that absent class members be given notice of class certification or the opportunity to opt-out of the class action. *See* Fed. R.Civ.P. 23(c)(2)(A).

■ Plaintiff's primary claim is for damages—the amount of statutory interest owed under Section 19–508. While the damages are set by statute and can theoretically be computed by objective standards, issues such as determining the date of receipt and tolling could potentially necessitate individual inquiries. The injuries were suffered not collectively but individually, and individual hearings may be required to determine the amount of damages. Therefore, under *Thorn*, class certification under Rule 23(b)(2) is inappropriate.

### C. Rule 23(b)(3)

Rule 23(b)(3) actions are "[f]ramed for situations in which class-action treatment is not clearly called for as it is in Rule 23(b)(1) and (b)(2) situations," but "may nevertheless be convenient and desirable." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (internal quotation marks omitted). A plaintiff seeking certification under Rule 23(b)(3) must meet two additional requirements beyond Rule 23(a): "Common questions must predominate over any questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* (internal quotation marks omitted).

#### 1. Predominance

The predominance requirement is "similar to but more stringent than the commonality requirement of Rule 23(a)" because it "requires that questions of law or fact common to the members of the class predominate over any questions affecting only individual members." *Thorn*, 445 F.3d at 319 (internal quotation marks omitted). This inquiry "tests whether proposed classes are suffi-ciently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623, 117 S.Ct. 2231.

Defendant first posits that predominance does not exist because to determine members of the purported class, an individualized liability inquiry is necessary. Defendant relies on *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138 (4th Cir.2001), in which building owners filed a class action against the seller of a stucco siding product plaintiffs alleged was defectively designed. The Court found that the predominance requirement was not met because individual issues necessary to adjudicate the defendant's liability would predominate. The damages could have been caused in each class member's case by unrelated, third-party applicators and contractors that installed the stucco siding, and therefore determining liability might necessitate a deep probe "into the individualized details of applicator and contractor behavior with respect to each … installation" of the stucco siding. *Id.* at 149. This individualized proof of damage causation, essential to determining liability, would predominate, especially as the "functional equivalent of a full-blown trial on damages causation for each putative class member would be required to determine to which individuals [the defendant] is liable." *Id.*

■ In this case, however, there is no issue of third-party causation. The damages could result only from Travelers' conduct. The duty to pay statutory interest on late payments rests with Travelers alone. The common legal issues presented in this case will not be overcome by the individual details of each class member's claim.

Defendant next asserts that different fact patterns among the class members predominate over the common issues. Varying fact patterns identified by defendant include "payment or underpayment of interest; overpayment of benefits; pay lags; tolling; potential misrepresentations by the claimant; and PIP–MedPay exhaustion issues." (Def.'s Mem. 40.) These issues inform liability and damages, because the "both liability and damages consist of a process of counting days from receipt of an invoice or AFB." (*Id.*)

Defendant points specifically to the "complex damages issues" involved with proving lateness by a specific number of days. (*Id.*) To illustrate, defendant points to several files in which the calculation of lateness is, in its opinion, complicated. (*Id.* [citing Def.'s Exs. J–19, J–31, J–36.].)

As an initial matter, an individual inquiry into damages will generally be required in a Rule 23(b)(3) action. The Fourth Circuit has explicitly recognized that a class action claim for monetary relief "will generally require the court to conduct individual hearings to determine the particular amount of damages to which each plaintiff is entitled." *Thorn,* 445 F.3d at 330; *see also* 6 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 18:27 (4th ed. 2002) ("A particularly significant aspect of the Rule 23(b)(3) approach is the recognition that individual damages questions do not preclude a Rule 23(b)(3) class action when the issue of liability is common to the class."). Indeed, as the Fourth Circuit noted, "Rule 23 contains no suggestion that the necessity for individual damage determinations destroys commonality, typicality, or predominance, or otherwise forecloses class certification. In fact, Rule 23 explicitly envisions class actions with such individualized damage determinations." *Gunnells,* 348 F.3d at 427–28 (*citing* Fed. R.Civ.P. 23 advisory committee's note).

The majority of the "complex" damages issues identified by Travelers, such as the treatment of overpayments, Travelers' failure to document pertinent dates, and treatment of MedPay benefits, may be resolved by a legal finding applicable to the entire class. After these legal determinations are made, the damages calculation could be, for most claimants, a matter of simple arithmetic. Indeed, had Travelers recorded the dates it received claims or, for tolling purposes, the dates it requested and received further information from a claimant or provider, damages would be calculated easily by counting the number of days the payment was late and determining the statutory interest due for that number of days.[4] The predominant inquiries, then, will likely involve legal determinations that apply to all class members.

### 2. Superiority

To warrant class action treatment under Rule 23(b)(3), a class action must be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). The facts the court should consider in determining superiority include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

*Id.*

The present lawsuit presents a situation perfectly suited for a class action. In several state court cases confronting nearly identical proposed classes, class certification has been found appropriate. *See, e.g., Crowhorn v. Nationwide Mut. Ins. Co.,* 836 A.2d 558 (Del.Super.Ct.2003); *Colonial Penn Ins. Co. v. Magnetic Imaging Sys. I, Ltd.,* 694 So.2d 852 (Fla.Dist.Ct.App.1997). The amount of statutory interest owed to a particular plaintiff is likely too small to provide adequate incentive for individuals to bring claims against the insurer. As I have stated elsewhere,

one of the legitimate purposes of class actions is to provide a mechanism for litigation of small claims that no individual plaintiff would have the incentive to bring. If a defendant has committed a substantial violation of the law, it should not be able to retain the benefits of its wrongdoing simply because it took a little bit from a lot of people.

---

4. The files cited by defendant as "complex" demonstrate that the only reason a damages calculation is anything other than a matter of elementary mathematics is due to defendant's *own* failure to properly document pertinent dates, and defendant's *own* errors in overpaying certain claims. (*See, e.g.,* Def.'s Ex. J–36 ["Tolling is difficult to calculate, in that the file does not indicate the dates on which Travelers requested or received the provider's tax identification number."].)

*In re Microsoft Corp. Antitrust Litig.*, 214 F.R.D. 371, 378 n. 10 (D.Md.2003); *see also Benway v. Res. Real Estate Servs., LLC*, 239 F.R.D. 419, 426 (D.Md.2006) ("Rule 23(b)(3) actions are particularly well-suited for cases in which small individual recoveries would not provide plaintiffs with enough incentive to prosecute separate actions."); *Mitchell–Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 560 (D.Md.2006) (quoting *Van Jackson v. Check 'N Go of Ill., Inc.*, 193 F.R.D. 544, 547 (N.D.Ill.2000)) ("This is precisely the kind of case that class actions were designed for, with small or statutory damages brought by impecunious plaintiffs who allege similar mistreatment by a comparatively powerful defendant. . . ."). The parties point to no other plaintiff in Maryland who has brought a similar claim, and it "appears likely that in the absence of class certification, very few claims would be brought," making " 'the adjudication of [the] matter through a class action . . . superior to no adjudication of the matter at all.' " *Gunnells*, 348 F.3d at 426 (quoting 5 Moore's Federal Practice § 23.48[1] (1997)) (alterations in original). The potential manageability concerns identified by Travelers, regarding proof of individual damages, are not sufficient to outweigh the clear advantages of a class action, especially as class actions based on circumstances presenting even greater manageability concerns than the instant case have proven efficient and economical. I find that a class action is the superior method—and, in fact, likely the only viable method—for adjudication of this controversy.

A separate order implementing this ruling follows.

### ORDER

For the reasons stated in the accompanying Opinion, it is, this 8th day of April 2009 ORDERED that plaintiff's motion for class certification is granted.